JOHN L. WIPFF v. DANIEL HEDER ET AL.

No. 239.

1. **Executors and Administrators — Statutes Construed.**—Under the Revised Statutes of Texas, articles 290–297, providing that "any person interested in the estate of a decedent may have the proceedings of the County Court therein revised and corrected at any time within two years after such proceedings were had, and not afterwards; provided, that infants shall have two years after the removal of their disabilities within which to apply for such revision and correction." *Held*, that when such revision and correction is sought to be obtained by means of a writ of certiorari from the District to the County Court, the cause thus brought to the District Court shall be tried de novo, and the proceeding thus provided for is a direct one, and not collateral in any sense.

2. **Same — Power to Sell — Order of County Court.**—The order of sale made by the County Court constitutes the administrator's warrant of power to sell, and it is his duty, in making a sale, to act in obedience to and in conformity with such power, and report his action under such authority *truly* to the court.

3. **Same— Sale by, Invalid and Avoided when.**—When an administrator makes a sale indirectly to himself, such sale is invalid as between the parties, regardless of their intention, or whether it was fairly made for an adequate price or not. That the sale was not made in conformity with the order of the Probate Court, nor as reported by the administrator, is sufficient to avoid it in a direct proceeding, it being enough to show that the report of sale was false and fraudulent.

4. **Same—Action Taken when Sale is Set Aside.**—When an administrator or executor sells land, and afterwards an order is entered vacating and annulling the order of the County Court confirming said sale, the amount paid by the administrator from the proceeds of said sale, on claims against the estate, with interest thereon at the rate designated in each claim, together with the cost of administration, less the commissions allowed the administrator for making the sale, with interest at the legal rate, should be *credited* to him; and the rental value of the property from the date of sale, less taxes and expense for reasonable repair thereon, up to the time of the trial, should be *charged* to the administrator.

5. **Advancements, What are.**—Where the husband and wife enter into an agreement "for the maintenance, support, and education of their child," under which agreement $2600 is placed in the hands of a trustee, to be managed and controlled as follows, to-wit: Said money to be put out on interest, with real estate security, the net proceeds of the interest accruing when the child becomes of age; said interest to be paid to the wife during the child's minority for its maintenance and support; when the child reaches his majority $1000 of said sum is to be paid to him; the interest on the remainder to be paid to the wife during her life, and in case of her death before the child the whole sum to be paid over to him. *Held*, that only the $1000 to be paid at the child's majority could be considered as an advancement, as the child might never receive the remainder.

APPEAL from Bexar.    Tried below before Hon. W. W. KING.

*Buckler & Martin* and *Otto Staffel*, for appellant.—1. An administrator can not buy at his own sale, either directly or indirectly, through his

wife or any one else, even though he may pay ten times the value of the property; and a purchase by another for the wife of the administrator is an indirect purchase by the administrator, and is prohibited both by common law and the provisions of our statute. Rev. Stats., art. 2082; Hamblin v. Warneck, 31 Texas, 91; Fisher v. Wood, 64 Texas, 119; Allen v. Gillette, 127 U. S., 589; Miles v. Wheeler, 43 Ill., 123.

2. He whose duty it is to sell can not make it his privilege at the same time to buy, as he can not be both buyer and seller; and whenever he is inhibited from buying because he is the seller, his wife is also inhibited from buying. Rev. Stats., art. 2082; Heath v. Lane, 62 Texas, 692; Linch v. Broad, 70 Texas, 92; Leitch v. Wells, 48 Barb., 637.

*W. W. Berry, Dick Berry,* and *Ed Haltom,* for appellees.—1. Where an instrument in writing creates a lien on property to secure a married woman in the payment of her separate money used in the purchase of the property, and the instrument gives the married woman the option of taking a portion of the property in payment of her debt or of demanding the money, it is not a sale of land to the married woman. 2 Bouv. Law Dic., 433; Benj. on Sales, 1.

2. There can be no fraud when all the parties in interest are aware of the terms and conditions of the sale, and the thing sold brings a fair price, without any intention on the part of the buyer to obtain the property at a less price than its real value. Erskine v. De la Baum, 3 Texas, 414.

3. Whether or not a transaction is fraudulent is a question of fact to be determined by the jury. Baldwin v. Peet, 22 Texas, 708; Green v. Banks, 24 Texas, 508; Kerr v. Hutchins, 46 Texas, 508.

NEILL, Associate Justice.—On the 27th day of July, 1874, Charles Schmidt was appointed by the County Court of Bexar County administrator of the estate of John B. Wipff, deceased, and on the 11th day of August, 1874, he filed his petition in said court for an order to sell a piece of land in the city of San Antonio, fronting about 103 feet on Flores Street, which belongs to the estate of his intestate; and on the 25th of November, 1874, the order was granted as prayed for, which authorized him to sell the property at either public or private sale. On the day the order was made the administrator accepted a written offer of $8101, made by Daniel Heder, for the purchase of the real estate, and on the same day it was reported to the court as a private sale made for cash, and the report was at a subsequent term duly confirmed and the administrator ordered to make the purchaser a deed to the property, which was done and duly approved by the court.

The administrator filed his final account of settlement at the January Term, 1877, and the account was approved, the administration closed, and the administrator discharged at the March Term, 1877. In this ac-

count the appellant, who is a son of the deceased, and was then a minor, was charged with the sum of $2000 as an advancement made to him by his father.

The appellant, alleging that he attained his majority on the 11th day of October, 1891, filed his petition in the District Court of Bexar County on the 9th day of February, 1892, for a writ of certiorari to the County Court, alleging that the sale of the land made by the administrator to Heder was fraudulent, and made in pursuance of a secret and private understanding and agreement between the administrator and the purchaser that he would convey to the administrator, or his wife, who was a daughter of the deceased, a half-interest in the property as soon as the sale should be confirmed and a deed made, and on the day the deed was executed Heder executed and delivered to the administrator's wife an agreement in writing, by which he bound himself to convey her an undivided half-interest in the property on her paying one-half of the purchase money, acknowledging he had not paid the same, and giving in the same instrument to the administrator a lien on the land to secure the purchase money; and that in pursuance of the agreement he subsequently conveyed by deed an undivided half-interest in the real estate to the wife of the administrator; that the sale was an indirect purchase by the administrator at his own sale of a half-interest in said property, and therefore fraudulent and void. That the sale, if not actually and intentionally fraudulent, it was made on credit instead of for cash, as required by the order by virtue of which it was made, and as such reported to and confirmed by the court.

That the sum of $2000 charged to plaintiff as an advancement in the final order of settlement and distribution of the balance of the money after paying the debts of the estate, was wrongfully charged to him; that it was not an advancement, and if it was, he should have been charged no more than its then value, as he was not to come into possession of it for many years thereafter; and that the final account and order of distribution were approved and made without notice or service of citation on appellant. Upon his petition therefor a writ of certiorari was issued, and said administration proceedings removed to the District Court for trial de novo.

Daniel Heder, Mary Heder, Agatha Schmidt, Sophia Wipff, and two children of the administrator Schmidt, who had in the meantime died, and William Hoefling, one of his bondsmen, were made defendants, but the case was subsequently dismissed as to the two children and Hoefling.

The appellant also, on the 10th of March, 1892, filed in the District Court of Bexar County his petition against Heder and wife, Agatha Schmidt, Sophia Wipff, and certain other parties in possession of the property as tenants of the parties named, praying for a partition of the land as be-

tween Mary Heder, Agatha Schmidt, and himself, and an accounting for rents, etc.

To each of the suits the appellees answered by a general denial. The two cases were by agreement consolidated and tried together, the trial resulting in a verdict and judgment for the appellees.

The case is before this court on appeal from said judgment.

It was proven as alleged, without controversy, that Charles Schmidt was appointed administrator of the estate of John B. Wipff, deceased; that he obtained an order of the Probate Court to sell the property in controversy; that he reported a sale of it to Daniel Heder for $8101 cash; that the sale was approved by the court, and that a deed was made by the administrator to the purchaser.

It was also shown by evidence which was uncontradicted, that on the 19th day of December, 1876, Daniel Heder executed and delivered to Mrs. Agatha Schmidt, the wife of the administrator, an instrument in writing reciting that Charles Schmidt, administrator of the estate of J. B. Wipff, deceased, had executed to him a deed to the property described in plaintiff's petition, and that in such deed the administrator had acknowledged the receipt of the entire amount of the purchase money of $8101 in silver. The instrument then proceeds as follows: " Whereas, I, said Daniel Heder, have only paid said administrator a part of said purchase money, for which I hold his receipt; and whereas, Mrs. Agatha Schmidt, one of the distributees of the estate of J. B. Wipff, deceased, has agreed I, said Daniel Heder, may postpone the payment of such part of said purchase money as may amount to and will include her distributive share in said estate, as well as her approved claim against said estate, for the purpose of securing unto Charles Schmidt the payment of the full amount of said purchase money, and also for the purpose of securing Mrs. Agatha Schmidt the payment of the amount of money coming to her as heir of J. B. Wipff, deceased, and as a creditor of said estate of J. B. Wipff, I, the said Daniel Heder, make, give, and create a lien upon the herein after described premises, which said lien shall have the full force and effect of a vendor's lien. And I further agree, that Mrs. Agatha Schmidt at her option paying one-half of the purchase money of $8101, or so much of said half as may be left to pay after deducting the money coming to her, that I will execute and deliver to her a deed to an undivided one-half interest in aforesaid premises;" which instrument was acknowledged by Heder on the 10th day of December, 1878.

On June 30, 1881, Daniel Heder and his wife made a deed to Agatha Schmidt, conveying her an undivided one-half interest in said property, which recited as the consideration the payment by Agatha Schmidt to Heder the sum of $4000. The deed contained a clause of special warranty against persons claiming under the grantors.

In a written agreement made on the 25th of September, 1873, between Sophia Wipff and John B. Wipff, the mother and father of appellant, which

was read in evidence, there is the following stipulation: "For the main-
tenance, support, and education of said child, John Louis Wipff, a fund
of $2600 coin (to which Mrs. Wipff contributes $600 of the above men-
tioned money she has heretofore received from her husband, the remaining
$2000 being contributed by John B. Wipff) is hereby settled upon said
John Louis Wipff and vested in a trustee, Benjamin Kempf, to be man-
aged and controlled by said trustee as follows, to-wit:   The money shall
by said trustee be let out on interest, securing the same by a lien on real
estate, the net proceeds of the interest accruing up to the 11th of October,
A. D. 1891, the boy's majority, to pay quarterly to Mrs. Wipff, who
promises faithfully and well to board, clothe, lodge, educate, and care
for said child for said money.   On or after said 11th of October, 1891,
the trustee shall pay to said John Louis Wipff $1000 coin of said fund,
and the remainder he shall continue to let on interest, paying the net
proceeds to Mrs. Wipff during her natural life.   If Mrs. Wipff die before
the 11th day of October, A. D. 1891, the date of the majority of the son,
then the trustee shall pay the interest to those having charge of said boy,
and on said 11th day of October, A. D. 1891, shall pay over to said John
Louis Wipff the whole fund.   If Mrs. Wipff die after John Louis Wipff's
majority, then the trustee shall immediately pay over all funds to him,  ·
the said John Louis Wipff.   Should John Louis Wipff die previous to
October 11, A. D. 1891, his mother surviving him, then the trustee shall
pay to her the net proceeds of the interest of the whole fund, as long as
she lives.   Should he die after said October 11, 1891, his mother surviving
him, then the net proceeds of the interest in the remaining fund ($1000
having been paid to John Louis Wipff) shall go to Mrs. Wipff for life.
If John Louis Wipff die intestate, the fund, or what may remain of it,
shall go to his heirs."

The final account of the administrator, which was introduced in evi-
dence, showed that the administrator charged him with $8101, the bid of
Heder for said property, with rent of the property for September, Octo-
ber, November, and December, 1876, at the rate of $100 per month; and
that after payment of all claims against the estate and expenses of admin-
istration, there remained a balance in his hands for distribution among
the heirs of $4383.16.   The report was approved by the court, and John
L. Wipff was charged with the $2000 provided for in the written agree-
ment made by Sophia Wipff and John B. Wipff as an advancement, and
of the $4383.16 in the hands of the administrator, $127.72 was ordered
paid to John L. Wipff and the balance to Mary A. Heder and Agatha
Schmidt.

Appellant's first assignment of error is:   "The court erred in submit-
ting the second issue to the jury, and in the charge given in explanation
thereof, which issue and explanation are as follows, ' Was the sale of the

property in controversy by Charles Schmidt, the administrator, fraudulent?' "

In order that the application of this and other assignments of error to the charge of the court may be understood, we here copy the entire charge. It is as follows:

"To the jury are submitted the following special issues:

"First. Was the $2000 advanced by John B. Wipff to Joseph Kempf, as trustee, intended as an advancement to plaintiff?

"Second. Was the sale of the property in controversy by Charles Schmidt, the administrator, fraudulent?

"In order that you may understand how to answer the foregoing special issues, you are instructed, that an 'advancement' is the payment of money to or for a child made by a parent in advance or in anticipation of the distributive share to which such child would be entitled after the death of the parent, and with a view to a settlement in life. Therefore, if you believe from the testimony that John B. Wipff paid the said $2000 to the trustee for the use of the plaintiff in anticipation of his distribution in life, then you will find that said sum was an advancement; but if you believe it a gift, or merely advanced for the support and education of plaintiff, with no intention that the same should be in anticipation of plaintiff's distributive share after the death of his father, then you will find that the same was not an advancement.

"The administrator having sold the property in controversy to Daniel Heder, and he having reconveyed or contracted one-half thereof shortly after the sale to Agatha Schmidt, the wife of the administrator, the sale is presumed to be fraudulent, and you will so find unless you believe from the testimony that said sale was fairly made for an adequate price, with no intention to procure the property at a price less than the real value, and in that event you will so find.

"You are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony."

At the instance of the appellant the jury was further instructed, "That the administrator had no right to acquire, either directly or indirectly, for himself or wife any benefits from the manner in which said sale was made, except to the extent they would be benefited on account of the wife's being a creditor and distributee of said estate; and if they believe that by making said sale to Heder, the administrator knew or thought either he or his wife would derive any other benefit therefrom than as a distributee, to find for plaintiff that the deed from administrator to Heder and his deed to Mrs. Schmidt were void."

Our statute provides, that "Any person interested in the estate of a decedent   *   *   *   may have the proceedings of the County Court therein revised and corrected at any time within two years after such pro-

ceedings were had, and not afterward; provided, that * * * infants * * * shall have two years after the removal of their * * * disabilities within which to apply for such revision and correction.'' Rev. Stats., art. 290. When such revision and correction is sought to be obtained by means of a writ of certiorari from the District to the County Court, the cause thus brought to the District Court shall be tried de novo, but the issues shall be confined to the grounds of error specified in the application for the writ. Rev. Stats., art. 297. The proceeding thus provided for is a direct one, and can not, in any sense, be considered a collateral proceeding. Linch v. Broad, 70 Texas, 94.

In this case the appellant, who as a son and heir is interested in the estate of the decedent, within two years after the removal of his disability as a minor filed his application in the District Court to have the orders approving the report of sale of the land to Heder, and the final report of the administrator, revised and corrected upon the grounds set forth in our statement of the case. The District Court having granted the writ, and having the transcript of the proceedings designated therein before it, should have tried the cause, so far as the grounds of error specified in the application in the writ are concerned, de novo. In other words, it should have been ascertained from all the evidence whether the sale of the land was made by the administrator to Heder, as stated in his report, for $8101 cash, or whether it was made, as claimed by appellant, to Heder in pursuance of a secret and private understanding between him and the administrator that he would convey a half-interest to Agatha Schmidt, the wife of the administrator, upon the confirmation of the sale, or was made on credit instead of for cash, as required by the order authorizing the sale. And if the sale was not made in pursuance of the order as reported by the administrator, but was made in either manner claimed by appellant, the District Court (the title not having passed from the original purchaser or purchasers and their heirs) should have vacated the orders confirming the sale and the administrator's final report distributing the assets of the estate. For the County Court, with proof before it establishing that the sale was not made in pursuance of its order, as reported, but in direct violation thereof, and in such a manner as was strongly indicative of fraud, if not conclusively establishing it, could not have confirmed such sale, but would have disaffirmed it.

The order of sale made by the County Court constitutes the administrator's warrant of power to sell, and it was his duty, in making the sale, to act in obedience to and in conformity with such power, and to report his action under such authority truly to the court.

Our statute, in plain and explicit language, prescribes the requisites of the report, and required that it shall be subscribed and sworn to by the administrator. One of the requisites is that it shall show the name of

the purchaser; and another, the terms of the sale. The administrator in his report shows that he understood what the statute required that it should show. He reported that it was made to Daniel Heder for $8101 cash. The uncontroverted testimony upon the trial established that it was made on credit to Heder, with the understanding that the wife of the administrator should have an half-interest in the property upon her complying with an agreement made on the day of sale with the purchaser, and that she afterwards complied with the terms of the agreement, and that the purchaser, in pursuance of it, made her a deed to the interest in the property stipulated therein.

Whether the sale to half of the property was one made indirectly by the administrator to himself, and therefore void under the provisions of Revised Statutes, article 2083, is a question not necessary for us to determine. If, however, it was such a sale, it would be invalid as between the parties, regardless of the intention of the parties, or whether it was fairly made for an adequate price or not. That the sale was not made in conformity with the order of the Probate Court nor as reported by the administrator is sufficient to avoid it in this proceeding. Heath v. Layne, 62 Texas, 687.

It is enough to avoid the sale, in a direct proceeding like this, to show that the report of it was false and fraudulent. This being shown, it should be annulled, without considering whether the property sold for an adequate price or not. And it will be the duty of the District Court upon another trial of this cause to submit to the jury the questions, first, whether the sale of the land was made by the administrator to Heder, as stated in his report, for $8101 cash; and, second, whether it was made to Heder in pursuance of a secret and private understanding between him and the administrator that the purchaser would convey a half-interest in it to the wife of the administrator upon confirmation of the sale in lieu of any part of the purchase price. And if the first question should be answered in the negative, or the second in the affirmative, to enter an order vacating and annulling the order of the County Court confirming said sale. The court should then have the jury determine the aggregate amount paid by the administrator from the proceeds of the sale reported by him upon the claims against the estate, and compute the interest thereon at the rate designated in the several claims up to the time of trial. The costs of administration, not including the commissions allowed the administrator for making the sale, should be likewise determined, and interest at the legal rate thereon so computed, and such sums credited to the appellees and charged against the property and made a lien thereon. The rental value of the property from the date of sale, exclusive of the taxes and reasonable repairs paid thereon in the interim, up to the time of trial, should be also determined by the jury, and charged to the appellees.

As by the written agreement of September 25, 1873, between the parents of the appellant, he was only to receive $1000 of the fund provided for in the agreement on the 11th day of October, 1891, the date he attained his majority, and by the terms of such agreement might never receive the remainder of the fund, the $1000 only should be considered as an advancement. This amount should be charged to him as such, with interest thereon at the legal rate from the 11th day of October, 1891, up to the time of trial.

The property should then be ordered sold by the District Court as under execution; and if the claims against the estate and expenses of administration, together with the interest thereon, exceed the rental value of the property ascertained as aforesaid, the proceeds of sale shall be appropriated first to the payment of such excess; and after such payments, out of the proceeds remaining, $1000, with legal interest from the 11th of October, 1891, should be paid to each of the appellees Agatha Schmidt and Mary Heder, and after such payment the remainder shall be equally divided between said appellees and appellant. But if the rental value of the property from the date of the sale by the administrator up to the time of the trial should be found to exceed the amounts paid out on claims against the estate and costs of administration, then such excess shall equally be charged to said appellees; and if it amounts to such sum as would equal $2000 with legal interest from the 11th day of October, 1891, then the proceeds of the sale shall be equally divided between the said appellees and appellant. But if the rental value of the property from the date of the sale by the administrator should be found to exceed the amount paid out on claims against the estate and expenses of administration, such excess shall be charged equally to appellees, and if it amounts to less than such a sum as would equal $2000 with legal interest from the 11th day of October, 1891, then of the proceeds of the sale of the property such sum shall be paid to said appellees as will, together with such excess, equal $2000 with legal interest from the 11th day of October, 1891, and the remainder after such payment shall be equally divided between said appellees and the appellant. But should the remainder of such rental value so charged to said appellees, after the payment of the claims against the estate and costs of administration, amount to more than such a sum as would exceed $2000 with legal interest thereon from the 11th day of October, 1891, then such excess, together with the amount received from the sale of the property, shall be equally divided between said appellees and the appellant.

The cause is reversed and remanded to the District Court for trial in accordance with this opinion.

*Reversed and remanded.*

Delivered March 14, 1894.

### AMENDMENT TO OPINION.

NEILL, Associate Justice.—On motion of appellant we further hold, that if upon the final trial of this cause an order should be entered vacating and annulling the order of the County Court confirming the sale, under the directions in our opinion, the interest on the annual rental value of the property should be computed from the times such rents were due up to the time of trial, and charged to appellees in like manner as the rental value of the property is directed in the opinion to be charged against them.

Delivered April 11, 1894.