REBECCA TERRY WHITE, SOLE DEVISEE AND LEGATEE OF THE ESTATE OF ANNA DAVIS TERRY, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89925.   Promulgated September 22, 1938.

*Ballinger Mills, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

OPINION.

SMITH: Section 302 of the Revenue Act of 1926 provides in part that:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

*          *          *          *          *          *          *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

The respondent's position is that the trust conveyances made by the decedent and her husband were testamentary in character and were to take effect in possession or enjoyment at or after death within the meaning of section 302 (c), above.

We do not so construe the trust instruments. We think that they effected completed transfers of the trust properties to the trustee for the benefit of the petitioner and that the transferors retained no interest therein except the possibility of reverter in case the petitioner should predecease them. The language of the trust instruments is that the grantors desire "to *give* to our daughter, Rebecca S. Terry, out of our community estate, property of the approximate value of Twenty-Five Thousand Dollars ($25,000.00)"; that the grantors "*have given* * * * and *do by these presents give* * * * to J. W. Terry, Trustee for our daughter, Rebecca S. Terry, the following described bonds." (Italics supplied.)

The trustee was directed to pay to the petitioner so much of the trust income as she might require or request and, in his discretion, to invest the remainder of the income "for her." The income so invested was to become a part of the trust estate. The trust instruments further provided that "These gifts are advancements from our community estate."

The above provisions of the trust instruments show quite plainly, we think, that the settlors intended to make a present gift, in the nature of an advancement, to the petitioner of the property thereby conveyed to the trustee.

The further provision of the trust instruments that in the event of the death of one of the grantors during the life of the beneficiary the trust estate "shall be brought into hotchpotch" is not contradictory of, and does not defeat, this construction. Bringing into "hotchpotch" means, generally, the blending and mixing of property belonging to different persons in order to divide it equally. See "hotchpotch"—Bouvier's Law Dictionary, and Words and Phrases; *In re Farmers' Loan & Trust Co.*, 181 App. Div. 642; 168 N. Y. S. 952.

Article 2576 of Vernon's Annotated Texas Statutes, vol. 8, p. 153, provides that:

*Advancements brought into hotchpotch.*—Where any of the children of a person dying intestate, or their issue, shall have received from such intestate in his lifetime any real, personal or mixed estate by way of advancement, and shall choose to come into the partition and distribution of the estate with the other distributees, such advancement shall be brought into hotchpotch with the whole estate, and such party returning such advancement shall thereupon be entitled to his proper portion of the whole estate; provided that it shall be sufficient to account for the value of the property so brought into hotchpotch at the time it was advanced.

An "Advancement" has been defined by the courts of the State of Texas as a payment of a portion of money or property, or a settlement of real estate, made by a parent to or for a child, in advance or in anticipation of the distributive share to which each such child would be entitled after the death of the parent, and with a view to an apportionment or settlement in life. See *Woessner* v. *Wells*, 28 S. W. 247; *Wipff* v. *Heder*, 6 Tex. Civ. App. 685; 26 S. W. 118; *Ruiz* v. *Campbell*, 6 Tex. Civ. App. 714; 26 S. W. 295.

With reference to the above quoted section of the Texas statutes the Supreme Court of Texas said in *Oxsheer* v. *Nave*, 90 Tex. 568; 40 S. W. 7:

> * * * By another article of our statutes (Rev. St. 1895, art. 1694) the heirs are expressly required to account for advancements; but this provision, it would seem, was inserted out of abundance of caution. Advancements are not part of an estate, though the heirs may bring them into hotchpotch and claim their full share of all the property. * * *

It is apparent from the provisions of the trust instruments here that the trust property was to be brought into hotchpotch upon the death of either of the grantors, not as a part of the community estate, but simply for the purpose of determining the amount which the petitioner was to receive from the community estate in addition to her previously acquired interest in the trust property. In the same paragraph of the trust instruments directing that the estate be brought into hotchpotch upon the death of either settlor is the further provision that upon the death of the petitioner the trust property "shall revert to and become a part of our community estate." Consider together, these provisions show clearly that it was not the intention of the grantors that the trust properties should revert to and become a part of the community estate upon the death of either of them, but only in case their daughter should predecease them.

The respondent contends that under the provision of the trust agreements:

> * * * the bonds conveyed by the decedent and her husband are brought into hotchpotch for the purpose of determining the value of the surviving spouse's interest in the community estate. Consequently under the terms of the trusts the transfer here was to be charged to, taken out of, or become a part of the vested interest in the community estate of the spouse who was first to die. * * *

the identity of the grantor of the trust could not be determined until the death of the first spouse to die; and that the only transfer which occurred upon the execution of the trust instruments was the transfer of the right of the beneficiary to receive the income from the trust property for the life of the decedent, her busband, and herself.

We do not agree with the respondent's contentions. The transfers under the trust instruments, we think, were completed transfers of a portion of the grantors' community estate, and the properties passed completely out of the ownership of the grantors, with the possibility of reverter in case the beneficiary predeceased them.

The Supreme Court held in *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, that property which the decedent had previously transferred in trust, irrevocably, for the benefit of his daughter for life, with remainder over, was not a transfer intended to take effect in possession or enjoyment at or after death and was not taxable in decedent's gross estate, notwithstanding that the trust estate was to revert to the grantor in case the daughter predeceased him. The generating source of title to the trust property, the Court said, was the trust instrument and not the death of the grantor. To the same effect is *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48.

The respondent's contention here that the transfers under the trust instruments of December 27, 1924, and February 7, 1925, were intended to take effect in possession or enjoyment at or after death, and, accordingly, are taxable in the community estate of the decedent and her husband, is not sustained.

*Judgment will be entered under Rule 50.*