ROBERT A. TAFT, EXECUTOR OF THE ESTATE OF ANNA S. TAFT, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77923. Promulgated December 10, 1935.

**672**

*Charles P. Taft, 2nd, Esq., Robert A. Taft, Esq.*, and *John H. More, Esq.*, for the petitioner.

*E. C. Algire, Esq.*, and *Lloyd B. Harrison, Esq.*, for the respondent.

STERNHAGEN: Respondent determined a deficiency of $1,627,585.28 in estate tax. He included in gross estate the value of property in a trust created by decedent for the benefit of her children, and he disallowed the deduction of several amounts paid by her executor because of promises made by decedent during her life.

### I.

*Findings of Fact.*—Anna Sinton Taft died suddenly on January 31, 1931, aged seventy-nine. On March 13, 1924, she created an irrevocable trust, naming a New York bank as trustee, to which she

transferred securities. At the time of her death the value of the trust property was $5,542,552.20. The transfer of the aforesaid property in trust was not made in contemplation of death. It was made solely to avoid or reduce her Ohio taxes. By the terms of the trust instrument, the income was to be paid by the trustee to the settlor for life, then to her husband for life, if he survived her. On the death of the survivor, the trust property was to go in equal shares to her two daughters. If either daughter predeceased the settlor, the settlor might appoint someone other than herself to receive such share, upon failure of such appointment, such share to go to the issue of such deceased daughter.

On April 25, 1924, by deed of gift, the decedent settlor and her husband transferred to their two daughters all their interest in a certain note held by the trustee and directed the trustee to pay the income therefrom to the two daughters. The value of this note at the time of decedent's death was $141,500.

Decedent's husband died in 1929. Her two daughters survived her.

*Opinion.*—The respondent has determined, under Revenue Act of 1926, section 302 (c), (d)[1] that the transfer in trust was in contemplation of or intended to take effect in possession or enjoyment at or

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. The relinquishment of any such power, not admitted or shown to have been in contemplation of the decedent's death, made within two years prior to his death but after the enactment of this Act without such a consideration and affecting the interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall be deemed and held to have been made in contemplation of death within the meaning of this title.

after her death or that the enjoyment thereof was subject at the date of her death to change by the exercise of a power to alter, amend or revoke.

Since the question whether the transfer was in contemplation of death is purely a fact question, the evidence has been considered and weighed to determine whether there is sufficient to outweigh the Commissioner's determination that it was. This consideration has been guided principally by *United States* v. *Wells*, 283 U. S. 102. Neither the prospect of death nor of Federal estate tax was a moving cause of the transfer. They were not in the decedent's mind. She was moved by the thought that if she continued to hold the securities in Ohio she was faced with problems of Ohio property taxes which impinged annually during her life. So, upon her counsel's advice, she moved this property to New York and placed it in trust there. If there were any evidence that death or death duties or a testamentary transfer was a concomitant thought or consideration, this would perhaps support the finding that the Government seeks, notwithstanding the thought of Ohio taxes, *Farmers Loan & Trust Co.* v. *Bowers*, 68 Fed. (2d) 916. But Ohio taxes were the only consideration, and this disproves the Commissioner's determination. Cf. *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48.

Whether the transfer was to take effect in possession or enjoyment at or after death, as the Commissioner has determined, is a question which in varying circumstances has been so frequently and fully considered that there is little more to be said by way of exposition. The question in this case comes down to whether the settlor's right to the income for her life and the contingent right to appoint as to corpus in the event of the death of a daughter is enough to bring the transfer within the tax act. The decisions support the petitioner's view that the transfer was not one to take effect in possession or enjoyment at or after death. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 238; *Morsman* v. *Burnet*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S. 784; *Helvering* v. *Duke*, 290 U. S. 591; *Helvering* v. *Helmholz*, 296 U. S. 93; *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48. These decisions also take the case out of section 302 (d), since the only power which the settlor reserved to alter or amend was contingent upon her survival of one of the daughters, and the contingency had not occurred, *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39.

The decision as to the trust includes the property which was covered by the deed of gift of April 25, 1924, but since by that gift the income as well as the principal of the note was irrevocably transferred, it is *a fortiori* not within the gross estate.

The respondent's determination is reversed as to the $5,542,552.20, and the trust property should not be included in the decedent's gross estate.

## II.

*Findings of Fact.*—In May 1930 the decedent made an offer, which the University of Cincinnati immediately accepted, to establish the Charles Phelps Taft Memorial Fund for use in teaching the humanities, to which she expected " ultimately " to transfer $2,000,000, and meanwhile amounts equivalent to the income of such a fund. The trust was formed, and $50,000 was given to it in October 1930, of which $33,800 was appropriated in December 1930 by the trustees to specific uses by the university, $11,753.83 being actually spent by the university before decedent's death. Thereafter the present petitioner, decedent's executor, paid amounts from time to time to the trust fund calculated as interest at prevailing rates upon the $2,000,-000.

*Opinion.*—The petitioner, on his return, deducted $2,000,000, and the Commissioner disallowed the deduction. There is no dispute of the proposition that the University of Cincinnati is a charitable and educational corporation, a direct bequest to which would be a deduction under the Revenue Act of 1926, section 303 (a) (3).[2] But this was not a bequest found in decedent's will, but a payment to be made by the executor in fulfillment of her contractual promise.

Petitioner argues that the $2,000,000 fund is deductible on two grounds, (a) it is a " claim against the estate * * * incurred or contracted bona fide, and for an adequate and full consideration in money or money's worth " (sec. 303 (a) (1)); and (b) it is " the amount of a transfer * * * for the use of " a charitable, etc., corporation (sec. 303 (a) (3)).

(a) There is no suggestion that the $2,000,000 was not a valid claim against the estate or that it was not incurred or contracted bona fide. The controversy turns upon whether it was " for an adequate and full

---

[2] SEC. 303. For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—
* * * * * *
(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate; * * *

consideration in money or money's worth." It may be assumed that the intendment of the statute was a liberal encouragement of charitable benefactions. When made during life they have always served to reduce individual income tax, and when made as testamentary transfers they have been permitted without limit to reduce estate tax. Whenever there is ambiguity or otherwise room for construction of the statute, such construction should be shaped to protect and promote this clear liberal purpose. *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578. But as Congress has the power to be liberal in enacting such deductions, it has also the power to state their limits. When such limits are stated clearly, they command; and no one may disregard them to make the liberality greater than its terms and clear implications justify. These precepts are well known and there has never been cause to question them. Taxpayers and tax administrators must be assumed to have long since adjusted their affairs consistently with them.

We find it impossible to hold that the decedent's obligation of $2,000,000 was for a consideration in money or money's worth. Certainly it was not if we give the statutory language a plain and simple meaning. And there are no circumstances surrounding its enactment or its administration or effect to require a different or "technical" meaning.

It has been held that a money pledge supported by similar pledges of others was deductible within the statute, *Jeptha H. Wade, Jr., et al., Executors*, 21 B. T. A. 339; *Frances Plumer McIlhenny et al., Executors*, 22 B. T. A. 1093, 1105; *David A. Reed et al., Executors*, 24 B. T. A. 166, 172. This is not such a case, for here neither the donee nor anyone else was giving to decedent or to anyone else anything of monetary value as a consideration for her promise. See *James Turner et al., Executors*, 31 B. T. A. 446. Its acceptance and the donee's act in reliance upon it may be consideration and may thus serve to bind her and her estate. Cf. *Porter* v. *Commissioner*, 60 Fed. (2d) 673, 675. But this is not all the statute requires; it is not money or money's worth.

The *Wade* case must be held within narrow scope. In the Sixth Circuit, the limitation of money or money's worth has been strictly adhered to as to a noncharitable claim, *Latty* v. *Commissioner*, 62 Fed. (2d) 952; see also *Central Union Trust Co. of New York et al., Executors*, 24 B. T. A. 296; and the Second and Eighth Circuits have held that the limitation is applicable no less to charitable claims, *Porter* v. *Commissioner, supra; Glaser* v. *Commissioner*, 69 Fed. (2d) 254; see also *Charles B. Bretzfelder et al., Executors*, 32 B. T. A. 146; cf. *United States* v. *Mitchell*, 74 Fed. (2d) 571.

(b) We are also of opinion that there was no transfer of the $2,000,-000 within the meaning of subdivision (3). So far as this record

shows, there has never been a transfer of the amount, but only a promise to " ultimately arrange to transfer " it to the trustees.   Such promise is not a transfer, and we continue to doubt (cf. *Charles B. Bretzfelder et al., Executors, supra*) that when the transfer is made by the executor it can be called testamentary by relating it back to the death rather than *inter vivos* by relating it to the earlier promise. Generally speaking, the intendment of the statute in placing the word " transfer " with bequests, legacies and devises is that since life transfers made, say, in contemplation of death, etc., are included in gross estate though not strictly bequests, legacies or devises, so such transfers made to the described charities shall be no less deductible than similar bequests, legacies and devises.   Thus property actually transferred by a decedent a year before death to a charity and held to be transferred in contemplation of death would be within the gross estate and at the same time among the permitted deductions.   Whether this indicates the limits of the application of the word in subdivision (3) needs not to be answered now.   Cf. *Fourth National Bank* v. *United States* (U. S. Dist. Ct., Kansas), C. C. H., vol. III—A, 1934, p. 10161.   Sufficient it is that no convincing reason is given for expanding it to embrace an antecedent promise such as this, and we may not permit ourselves to be moved by our approval of the decedent's philanthropy.

The respondent's disallowance of the deduction of $2,000,000 is sustained.

## III.

*Findings of Fact.*—On June 21, 1930, decedent promised, in consideration of the subscriptions of others, to pay $5,000 a year for five years to the Cincinnati Museum Association for its current expenses, contingent upon subscriptions of $40,000 a year from others.   The $40,000 was subscribed.   Decedent, before her death, paid $2,500, and her executor has since paid the rest.   The association is a corporation organized and operated exclusively for educational purposes.

*Opinion.*—The petitioner deducted $22,500 as a claim deductible under section 303 (a) (1), and the respondent disallowed the deduction.   The facts bring it squarely within *Jeptha H. Wade, Jr., et al., Executors, supra,* in which the claim of a charity based upon monetary pledges of others was held to be for an adequate and full consideration in money or money's worth.   Within these limits the opinion has been since adhered to, *Frances Plumer McIlhenny et al., Executors, supra; David A. Reed et al., Executors, supra;* cf. *James Turner et al., Executors, supra.*

The deduction is proper and the respondent's disallowance is reversed.

## IV.

*Findings of Fact.*—During her life, the decedent, to some extent modifying the terms of an arrangement made in 1927 by her and her husband for a substantial gift to the Cincinnati Institute of Fine Arts, promised an additional $50,000 a year for five years for the support of the Cincinnati Symphony Orchestra if $2,500,000 were subscribed by others. The campaign for such subscriptions succeeded, and in fulfillment of her promise the decedent during her lifetime paid $125,000 to the Institute for the support of the orchestra. The remaining $125,000 has since her death been paid by petitioner, as her executor, in periodic payments.

*Opinion.*—This claim against the estate for the remaining $125,000 is in all respects similar to the foregoing claim of the Museum Association, and its deductibility is also sustained by *Jeptha H. Wade, Jr., et al., Executors, supra.*

The Commissioner's disallowance is reversed.

## V.

*Findings of Fact.*—Before her death, decedent had promised to contribute to the Cincinnati Institute of Fine Arts $3,920 each year for two years, to be used to pay the compensation of two musicians in the Symphony Orchestra who would otherwise have been dropped from the orchestra for want of sufficient funds to pay them. She paid the first $3,920 before her death, and the petitioner, as her executor, paid the second $3,920 after her death.

*Opinion.*—This claim, although its validity and enforceability are not questioned, is not based on money or money's worth. Nor is it based on the money promises of others within the rule of *Jeptha H. Wade, Jr., et al., Executors, supra.*

The Commissioner's disallowance is sustained.

## VI.

*Findings of Fact.*—During her life the decedent pledged $5,500 to Christ Church, her pledge being one of several hundred. Before her death decedent paid $1,375, and after her death petitioner, as her executor, paid the remaining $4,125.

*Opinion.*—This $4,125 claim against the estate is deductible within the rule of *Jeptha H. Wade, Jr., et al., Executors, supra.*

The Commissioner's disallowance is reversed.

## VII.

*Findings of Fact.*—Before her death decedent, on several pledges made in consideration of the pledges of others, had promised the

Community Chest for the support of Cincinnati charitable organizations $31,500 for 1930 and $44,000 for 1931. Before her death she had paid all but $7,875 of the 1930 pledge, leaving unpaid also the $44,000 for 1931. This $51,875 was paid after her death by petitioner, as her executor.

*Opinion.*—This $51,875 is deductible as a claim against the estate within the rule of *Jeptha H. Wade, Jr., et al., Executors, supra,* and the Commissioner's disallowance is reversed.

## VIII.

*Findings of Fact.*—In July 1930, by contemporaneous writings of Bertha Baur, the Cincinnati Institute of Fine Arts, and the decedent, Bertha Baur agreed to transfer to the Institute her shares in the Cincinnati Conservatory of Music, a business corporation, and to advise as to the conservatory's future management, the decedent promised to make available to the Institute $10,000 a year to be paid to Bertha Baur and $3,000 a year to be paid to her cousin, and promised also that she would transfer sufficient funds to the Institute each year to assure the conservatory's quick assets being equal to its liabilities; and the Institute accepted these offers and thereupon reorganized the conservatory as a charitable corporation. Pursuant to this obligation the decedent made certain payments before her death, and since her death the petitioner, as her executor, has made periodic payments. Bertha Baur was at the time of decedent's death seventy years of age, and her cousin was sixty-eight. Calculated by the use of experience tables, the value at the time of decedent's death of the promised payments to Bertha Baur was $63,171.60, and to her cousin $20,738.94. Decedent's agreement to see that the conservatory's liabilities did not exceed its quick assets when taken over by the institute amounted at the time of her death to $54,106.69.

*Opinion.*—So far as prior decisions indicate, this is an unique situation. The writings constitute an integration which may be regarded as a tripartite contract, the considerations operating equally upon all. Although the decedent did not actually receive in hand any money or money's worth, it seems clear that the consideration which bound her to her promise was an adequate and full consideration in money or money's worth. Bertha Baur, acting largely upon the decedent's promise to provide the funds with which the annuities of herself and her cousin should be paid, promised to and immediately did convey the conservatory property which had theretofore been her only source of livelihood. It consisted of shares of stock in a business corporation which owned the conservatory buildings and 10 acres of land, all of which had been conducted as a successful business. That this property was money's worth is not denied. It is,

however, argued that, because no property came into decedent's hands and because decedent's promise was for the purpose of a charitable benefaction, it is not to be characterized as a " business transaction ", and therefore not within the intendment of the statute. Cf. *Glaser* v. *Commissioner, supra.* Were this actuated by a strictly business motive, it would be deductible under *United States* v. *Mitchell, supra,* despite the fact that no money or property consideration came into the decedent's hands. The statute, however, omits a requirement that the consideration must enlarge the decedent's possessions, and requires only that the consideration for the claim against the decedent shall be adequate and full in money or money's worth. While this clearly includes an enlargement of the decedent's estate, a granting of a right or privilege, and a discharge of a contractual or tort claim, *Latty* v. *Commissioner, supra,* we think it might also include such unusual considerations as this. Indeed, it is probable that the contract gave to decedent a new right against Bertha Baur that she had not theretofore had, and thus the claim is brought within the second of Judge Hickenlooper's enumerated classes.

The Commissioner's disallowance of this item as a deduction is reversed.

## IX.

*Findings of Fact.*—By a written agreement of February 27, 1930, the decedent, the Patristic Commission of the Prussian Academy of Sciences and two professors agreed to prepare, print and publish an edition of Athanasius, and to make the necessary expeditions abroad for that purpose. Decedent was to pay the cost of the expeditions, not to exceed $5,000, and was to bear two thirds of the cost of printing, not to exceed $10,000. The academy was to have the book printed and to pay one third of the cost of printing, not to exceed $5,000. The professors were to do the work. Before her death decedent paid $2,000, and since her death the petitioner, as her executor, has paid $3,537.34, and is advised that the remainder of decedent's $15,000 obligation will be required.

*Opinion.*—The only question as to this item is whether the consideration for the claim is in money or money's worth. In our opinion, it is. Although the contract in evidence does not provide that decedent should receive anything tangible by way of consideration for her promise, it is, nevertheless, so far as this record shows, for her benefit that the services were to be performed and the book prepared and published. There is nothing to indicate that this was a benefaction to either the Prussian Academy or the two professors. In law there was simply a binding contract for services and payment. There is no evidence upon which it could be said that the services

were not valuable to decedent or were less than an adequate and full consideration in money's worth. On the other hand, it is clear that they were.

The respondent's disallowance of the deduction is reversed.

## X.

*Findings of Fact.*—In a letter of June 3, 1929, to the president of the Cincinnati Institute of Fine Arts, the decedent promised to contribute $10,000 per annum toward the salary of a man to be employed by the institute as director of art. Thereupon the institute engaged such a man. Before her death the decedent paid $10,000 which was used for the payment of such salary in 1930, and $5,000 in 1931. After her death the petitioner, as her executor, paid $5,000 in 1931 as the remainder of what he regarded as the obligation for 1931, and in March 1932 paid $5,000 more.

*Opinion.*—This item is like that in regard to the amount paid to the symphony orchestra and used for compensation to the two musicians, considered in item V. It is, so far as the record shows, merely a beneficent promise by the decedent to the institute and can not be regarded as based upon an adequate and full consideration in money or money's worth.

The respondent correctly disallowed the deduction.

## XI.

*Findings of Fact.*—In 1930 the decedent promised the University of Cincinnati to pay $3,000, the amount of his salary, if the university would employ Professor Kelly to give a course in musical appreciation, a course which the university was not otherwise financially able to support. Kelly was employed and the decedent made five periodic payments of $300 to the university on this account during her lifetime, and the petitioner, as her executor, paid $1,500 on this account after her death.

*Opinion.*—So far as the record shows, this is governed by the same considerations as the preceding item, and the Commissioner's disallowance of the deduction is therefore sustained. It does not appear that any contract was made between Kelly and the decedent or that Kelly's employment was in consideration of the decedent's promise. There was merely a beneficent promise by the decedent to make additional donations to the university which the university undertook to use in the prescribed way. However binding the decedent's promise, it cannot, upon this record, be said to have been based on an adequate and full consideration in money or money's worth.

## XII.

*Findings of Fact.*—The decedent had for several years been contributing $1,900 to the University of Cincinnati, which was used by the university to augment the salary of Professor More. At the time of her death she had not paid this amount for the year 1930–1931, and the petitioner, as her executor, regarding it as an obligation, paid it to the university.

*Opinion.*—Without more evidence then is in the record regarding this item, it can not be said that the amount was paid as a claim based upon an adequate and full consideration in money or money's worth, and the respondent's disallowance of the deduction is therefore sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

