*18 OPINION.
Matthews :
The principal issue for determination is whether the respondent erred in including in the decedent’s gross estate the value of the property covered by the five trusts created by the decedent during his lifetime. It will be observed that all of these trusts were created subsequent to the enactment of the Revenue Act of 1926, the statute here applicable, so that no question of unconstitutional retro-activity arises. Cf. Nichols v. Coolidge, 274 U. S. 531; Helvering v. Helmholz, 296 U. S. 93. None of the trusts was created in contem *19 plation of death and each contained a provision by which the settlor reserved the power to alter, amend, or revoke, with the concurrence of the beneficiary, the trusts therein contained. This power to revoke was not exercised or relinquished by the decedent during his life in respect of either trust made for his two sons, and it is not questioned that it remained in full force and effect until the decedent’s death. Our first question, therefore, is whether the cessation of this power at death was the cessation of such substantial control over the property of these two trusts as to warrant their inclusion in the decedent’s gross estate.
Any doubts which may have existed upon the inclusion of such an interest have been put at rest by the Supreme Court’s recent decision in Helvering v. City Bank Farmers Trust Co., 296 U. S. 85. In that case the husband was a beneficiary to the extent of a life interest, following the settlor’s, and to the extent of the corpus if he should survive the settlor’s two daughters'. The husband survived the settlor, the trust continuing in force. “The trust was irrevocable”, the Supreme Court said, “save that the settlor reserved the right to modify, alter or revoke it, in whole or in part, or to change any beneficial interest, any such revocation or alteration to be effected with the written consent of the trustee and her husband or, if the husband were dead, of the trustee and her brother.” Although it was argued on behalf of the taxpayer that section 302 (d) of the Revenue Act of 1926 [1] should be construed in the light of section 219 (g), which would amount to adding to the phrase “in conjunction with any person” the words “not a beneficiary of the trust”, it was pointed out by the Supreme Court that the language was plain and its clear intent could not be disregarded. The Court held that there was nothing unreasonable or arbitrary in the provisions of section 302 (d) and that where, subsequent to the passage of the Revenue Act of 1926, the creator 'of a trust estate saw fit to reserve to himself jointly with any other person the power of revocation or alteration, the transaction should be treated for the purposes of the law as intended to take effect in possession or enjoyment at the death of the settlor.
We are of the opinion, therefore, that the value of the trusts created by the decedent for his two sons was properly includable in his gross estate.
*20 In the trust for his daughter, created the same day as those for her brothers, the income was to be paid to her for life from the date of her majority (March 1, 1937), with remainder as she should appoint, or to her heirs. During her minority the trustee was to apply the trust income towards her “maintenance, education and support”, the receipt therefor of her father, the settlor, or of her mother being a proper acquittance to the trustee. The power to alter or revoke was reserved in the same terms as were used in the trusts for the decedent’s sons except that in the provision relative to the concurrence of the beneficiary the words were added, “after she shall have attained majority.” This power remained unexer-cised at the time of decedent’s death.
The petitioners contend that the decedent had no power to revoke at the time of his death in 1931, since at that time his daughter had not reached her majority and the power to revoke would not spring into being until she could concur in its exercise. This is a matter of construction and we can not agree that this is a normal construction of the actual words used or, even if the words should be thought ambiguous, that it would be a reasonable construction to put on decedent’s intention in all the circumstances. The clause, “with the concurrence and assent of the said Margaret Dunning Day after she shall have attained majority”, would seem to be a limitation on the decedent’s power only when and after his daughter should have reached her majority, leaving the decedent’s power to revoke during her minority free and untrammeled. It would have been idle to-put in the concurrence of his daughter while she was still a minor, and it is not likely that the decedent would have put beyond himself a full control of her interests while he was still her natural guardian. Everything points to an absolute power of revocation in the decedent during his daughter’s infancy, which was to be limited by her concurrence only after she had reached years of discretion.
We are of the opinion, therefore, that the decedent’s power to revoke was unconditioned in respect of the trust for his daughter at the time of his death, and hold that its value was properly in-cludable in his gross estate.
We shall next consider the two trusts the uses of which were-changed by the decedent in accordance with the power to alter or revoke reserved by him as settlor. In the case of the trust for his wife, the original trust indenture provided that the trustee should pay the net income to the decedent for life, then to his wife for life, then to his three children equally for their lives with a gift over of the remainder to their appointees. On February 5, 1931, the decedent exercised, by a written instrument executed by himself and his wife jointly, his power to alter the original trust with his wife’s concurrence and revoked the provision with respect to paying the *21 income to himself for life, “to the end that the income from the said fund shall be payable to Margaret Day, wife of the said Set-tlor, from this date forward, during her life with remainders over as in the said Indenture recited.” No other alteration or amendment was made by the decedent, it having been expressly recited in the instrument dated February 5, 1931, that it was the intention of the settlor “to modify in part the uses and trusts in said indenture contained as hereinafter recited, the terms and conditions of said indenture to otherwise remain unchanged.”
We are of the opinion that the value of the property so transferred in trust by the decedent is includable in the decedent’s gross estate. The modification in part of the uses and trusts contained in the original trust deed, by revoking that portion which provided that the settlor should receive the net income for his life, did not amount to an exhaustion of the powers reserved to the settlor in the original deed. Indeed, the provisions of the original deed were expressly reaffirmed in that the terms and conditions thereof were not to be changed, except for the modification in the one particular which was accomplished under the instrument dated February 5, 1931, by revoking the life interest of the settlor. The settlor still retained the power, with the consent of his wife, to make any desired alterations or amendments with respect to the remaining uses and trusts contained in the original deed and there was no change in the provisions governing the ultimate disposition of the property. Under these circumstances we do not agree with the petitioners’ contention that the decedent had no further control over the property of this trust after the' execution of the instrument dated February 5, 1931.
In the case of the trust for the decedent’s mother, the original trust indenture provided that the trustee should pay the net income therefrom to his mother for life and at her death should pay the corpus to the decedent. On May 4, 1931, the decedent and his mother signed a written instrument which revoked the uses and trusts contained in the original trust indenture and directed that the fund so assigned should be held by the trustee in trust, to pay the net income therefrom to his mother for life and at her death to divide the corpus into three separate shares and to add one of such shares to each of the trusts created by the decedent for the benefit of his three children under the three trust deeds dated August 21, 1930. No other alteration or change was made by the decedent, it having been expressly recited in the instrument dated May 4,1931, that it was the intention of the settlor “to revoke the uses and trusts in said indenture set forth and to make new uses as hereinafter recited, the terms and conditions of said indenture to otherwise remain unchanged.”
*22 We are of the opinion, that the value of the property covered by this trust is likewise includable in the decedent’s gross estate. What we have said above with respect to the trust created by the decedent for his wife is applicable also to the trust created for his mother. In each instance the decedent reserved to himself an interest in the trust created by the original deed and by amendment he gave up the interest which he had so reserved. In the case of the trust created for the benefit of his wife the decedent ivas to receive the income for life, and he modified the trust by revoking his life interest; under .the terms of the trust created for the benefit of his mother the corpus of the trust was to revert to the decedent or to his estate after his mother’s death, and he substituted for this provision a paragraph providing that the corpus should be divided and the shares added equally to the trusts which he had established for the benefit of his three children. Inasmuch as all other terms and conditions of the original trusts were to remain unchanged, and the right to alter, amend, or revoke, with the concurrence of the beneficiary, was one of the other terms and conditions, we hold that the decedent did not relinquish his right to exercise control over the property thereby transferred and effectually to direct its devolution. The decedent having retained the power to revoke or change the trusts, in conjunction with the beneficiaries, which power was not exhausted when the trusts were altered under the circumstances hereinabove set out, the enjoyment of the property was, at the date of the decedent’s death, subject to a change through the exercise of such power, within the meaning of section 302(d).
In the view which we have taken it is unnecessary for us to consider the respondent’s alternative argument that the decedent’s modification of the trusts in favor of his wife and his mother, by the instruments dated February 5, 1931, and May 4, 1931, amounted to a relinquishment in contemplation of death of the powers reserved to him under the original deeds of trust; for this reason we have not incorporated in our findings of fact, and we shall not discuss herein, any of the evidence introduced by the parties with respect to the decedent’s physical and mezital condition on the significant dates, or the circumstances connected with his last illness, which evidence is claimed to throw light on the motives actuating the decedent in making disposition of the property covered by the trusts.
The petitioners claim as an allowable deduction, under section 303 (a) (1), the sum of $15,000 as additional counsel fees incurred in administration of the decedent’s estate; $5,000 has already been claimed and allowed. The parties stipulated that the petitioners have agreed to pay and will pay their counsel as additional fees at least the $15,000 claimed, and that the total amount of $20,000 *23 is comparable to tbe fees ordinarily paid in estates of this size and will therefore be allowed by the Orphans’ Court. In these circumstances'we hold that the $15,000 claimed as a deduction in respect of additional attorneys’ fees should be allowed. Irving Bank-Columbia Trust Co. et al., Executors, 16 B. T. A. 897; Arthur M. Lamport et al., Executors, 28 B. T. A. 862; William Rhinelander Stewart, Jr., et al., Executors, 31 B. T. A. 201.
This brings us to the three deductions, in the total amount of $23,500, claimed in respect of pledges made by decedent during his life to certain educational and charitable institutions. The several donees are public educational or charitable institutions, not run for private gain, within the meaning of the statute. The petitioners claim them under section 303 (a) (1) or (a) (3), Revenue Act of 1926, set out in the margin.[2] Although they were originally allowed by the respondent, he avers in his amended answer that they should be disallowed on the ground that none of the pledges was made for a full and adequate consideration in money or money’s worth.
With respect to the gifts to the Benjamin Franldin Memorial, Inc., and the Welfare Federation of Philadelphia, the decedent expressly promised to pay the specified amounts in consideration of the subscription of others. The facts bring these pledges squarely within the ruling of this Board in Jeptha H. Wade, Jr., et al., Executors, 21 B. T. A. 339, and Robert A. Taft, Executor, 33 B. T. A. 671, in each of which decisions certain claims of charitable and educational institutions against the decedent’s estate based upon monetary pledges of others were held to be for an adequate and full consideration in money or money’s worth, within the meaning of section 303 (a) (1). We therefore hold that the deductions -claimed by the petitioners on account of these two items are proper and should be allowed by the respondent in computing the net estate subject to tax.
*24 We are of the opinion that the same rule is applicable to the underwriting agreement executed by the decedent, whereby he agreed with the other underwriters and with the Pennsylvania Museum of Art to insure the sum of $25,000 toward a fund to be used by the museum for the purchase of certain works of art, in accordance with the terms and conditions therein set out. This underwriting agreement is quoted in full in our findings of fact and the parties have stipulated the facts relating to the collection of the fund. The decedent’s subscription was in consideration of like subscriptions by others; it amounted in effect to a gift to the museum which, although indefinite in amount when subscribed, will have to-be paid in full by the petitioners. Under these circumstances we hold that the claim for the balance of $17,500, which had not been paid prior to the decedent’s death, is based on the money promises of others, within the rule of Jeptha E. Wade, Jr., et al., Executors, supra, and constitutes an allowable deduction.
As to petitioners’ claim in respect of a credit against the Federal estate tax for state inheritance and estate taxes paid, nothing appears of record beyond petitioners’ claim for such a credit in their petition and their counsel’s enumeration of the same claim in stating the issues in their brief. No argument or facts were adduced in support of the claim. Respondent recognized the sum of $101,906.03 as an allowable credit in respect of this claim in his deficiency notice. While the facts stipulated show that petitioners claimed the sum of $112,124.96, we have no evidence that this sum was actually paid. We must conclude, therefore, that petitioners have abandoned this claim in excess of the amount of $101,903.06 already allowed.
Reviewed by the Board.

Judgment will he entered under Rule 50.

 Sec. 303. For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—
(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide, and for an adequate and full consideration in money or money’s worth, * * *
[[Image here]]
(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate; * * *.