ESTATE OF ROBERT WETHERILL, DECEASED, CHESTER-CAMBRIDGE BANK & TRUST COMPANY, ROBERT WETHERILL, JR., AND ANNE W. KERR, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86862.    Promulgated December 31, 1937.

*Edgar J. Goodrich, Esq.*, and *J. H. Ward Hinkson, Esq.*, for the petitioners.

*Frank T. Horner, Esq., Eugene G. Smith, Esq.*, and *William H. O'Connor, Esq.*, for the respondent.

1260

1266

**OPINION.**

MURDOCK: The parties have agreed to the value at the date of the decedent's death of the property in the two trusts. A great deal of evidence was introduced on the question of whether or not the trusts were made in contemplation of death. All six of the decedent's surviving children, several of his sons-in-law, several grandchildren, domestic servants, family physicians, close business associates, attorneys who took part in preparing the trust instruments, and others have testified at length as to the business career, character, mental qualities, physical condition, and mode of life of the decedent, the financial circumstances of the children, and declarations of the decedent made before, at the time of, and after the making

of the transfers in controversy. Their testimony was supplemented by photographs and motion pictures of the decedent. This evidence is summarized in the findings of fact. All of the evidence has been carefully considered, regardless of whether or not particular mention is made of it in the findings.

The first question for decision by the Board is whether the Commissioner erred in including in the gross estate of the decedent $5,839,414.16 representing the value at the date of the decedent's death of property transferred by him in trust for the benefit of his children on October 6, 1931. The Commissioner, in determining the deficiency, held that this transfer was made by the decedent in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926. The burden of proof on this issue was upon the petitioners. They have produced a great deal of evidence to show that the transfer was not made in contemplation of death. The decedent was an unusually healthy man. He suffered from no illness or physical weakness which might furnish a possible reason for making the transfer. Although he was about eighty-three years of age at that time, it has been held that age alone can not be regarded as furnishing a decisive test. *United States* v. *Wells*, 283 U. S. 102. The decedent was cheerful, hopeful, optimistic, and sanguine in character and temperament, and had no tendency to be sad, despondent, or gloomy. He was extremely active in the affairs of life. The evidence shows that his purpose in creating this trust was one associated with life rather than with death. That purpose was to make his children independent financially during his lifetime so that they would no longer annoy him with requests for money and so that he could assist them in their efforts to learn how to handle large incomes. Another purpose, of less importance but one likewise associated with life rather than with death, was to relieve himself of the burden of handling a part of his fortune. His own tastes were simple and he used only a small portion of his income for his personal needs and living expenses. Several of his children were entirely dependent upon him for support; others made frequent and urgent demands upon him for financial assistance. He was both annoyed and disappointed by these frequent demands. The long delay in the establishment of the trust is amply explained by evidence of the decedent's slow, deliberate, careful, and methodical way of conducting his affairs. There is a finding above that the transfer of October 6, 1931, was not made in contemplation of death. The evidence preponderates in favor of such a finding.

The principal argument made by the respondent is based upon statements made by the decedent in letters to the Bankers Trust Co. of New York to show consciousness of Federal estate taxes and con-

templation of death. All of the correspondence between the decedent and that bank has been examined and carefully considered in the light of all of the other evidence in the case. The phrase "setting your house in order for the inevitable end" and the phrase "get your House in order" are the statements relied upon by the respondent to show that the transfer of October 6, 1931, was made in contemplation of death. He says those phrases are "the mournful expressions of the decedent himself." We think, however, that the decedent must have borrowed the words from the writings or statements of some other person because they do not seem to come naturally from his hand. But however that may be, their use by the decedent in these letters is insufficient evidence that the transfer, made many years later, was made in contemplation of death. Cf. *Commercial National Bank*, 36 B. T. A. 239.

The letters in this correspondence written by the decedent are for the most part extremely ambiguous, vague, and indefinite. It is difficult, if not impossible, to determine from the letters what may have been the decedent's purpose in writing them. He may have had in mind his will. The trust for his children was never mentioned in any of the letters. The letters contain a reference to a possible trust for his grandchildren. There is evidence to indicate that the decedent was peculiarly fond of obtaining free advice and information on many subjects. The petitioners suggest, and they may be right, that the decedent in this correspondence was merely enticing the bank to give him as much free information as possible without in any way committing himself. But regardless of what may be the correct explanation of these letters and of the use by the decedent of the expressions in question, we are satisfied that their presence in this record is insufficient to show that the transfer of October 6, 1931, was made in contemplation of death or even to balance the evidence of the petitioners that the transfer was not made in contemplation of death.

The respondent contends further that this transfer was made to take effect in possession or enjoyment at or after death. The authorities on this point are to the contrary. The trust was irrevocable and absolutely divested the grantor of all title to the property. After the transfer he held no right in the trust estate which in any sense was the subject of testamentary disposition, and his death neither passed any interest to any of the beneficiaries nor enlarged their interest beyond what was conveyed by the indenture. *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39. The trust instrument contains the following provision:

The interest of the respective beneficiaries to be contingent upon their being respectively alive at the stated time or times of income distribution and the stated time of principal distribution, and not to constitute a previously vested interest.

However, the case is not controlled by niceties of the law of contingent and vested remainders, but rather by whether the death of the decedent is the indispensable event which effects transmission of the estate from the dead to the living. *Klein* v. *United States*, 283 U. S. 231. If the title of the grantor is divested, it is not important whether there was a vesting of title in a particular grantee. *Tait* v. *Safe Deposit & Trust Co.*, 74 Fed. (2d) 851. The decedent in the present case parted with all title. He provided that if a particular beneficiary were not alive to receive a particular distribution, that distribution should go to another beneficiary. There was no probability of failure of any part of the grant because of lack of named beneficiaries. Cf. *Nanaline H. Duke et al., Executors*, 23 B. T. A. 1104, 1114; affd., 62 Fed. (2d) 1057; *Daisy Christine Patterson, Executrix*, 36 B. T. A. 407. The conclusion that this transfer was not made to take effect in possession or enjoyment at or after death within the meaning of section 302 (c) seems inescapable.

The next question is to determine whether or not there is evidence in the record to support the respondent's affirmative contention that the transfers in trust for the benefit of the decedent's grandchildren were made in contemplation of death. He did not hold, in determining the deficiency, that those transfers were made in contemplation of death. His claim in this connection is for an increased deficiency, represents new matter in his answer, and, therefore, the burden of proof is upon him. The original of these transfers was made 11 years prior to the decedent's death. The evidence shows that these transfers also were made for purposes connected with life rather than with death. The decedent wanted to use a relatively small part of his ample fortune, while his grandchildren were still young, to create a fund which would give each grandchild a certain financial independence when the child became of age. He planned to have the income accumulate and become corpus during the minority of each child, and it was characteristic of him to want to establish the fund as early as possible so as to hold to a minimum the amount necessary to bring about the desired results. That was his reason for allowing the trust for the benefit of his grandchildren to take precedence over the trust for his children. He had already had experience with his own children and he wanted his grandchildren to be independent of their parents and to pay their own way in life after they became of age. The evidence in the record of his purpose in creating this trust is not nearly as voluminous as is that showing his purpose in creating the trust for his children. He discussed the trust for the grandchildren less than he discussed that for his children. The respondent again relies upon the correspondence with the Bankers Trust Co. which has been discussed above. That

evidence fails to show that this transfer was made in contemplation of death, and there is no other evidence in the record to show that the purpose of the transfers related to death rather than to life. Nor were these transfers for the benefit of the decedent's grandchildren made to take effect in possession or enjoyment at or after death. This trust instrument completely divested the decedent of any interest in the property transferred. The Commissioner did not err in failing to include the value of this trust property in the gross estate of the decedent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

MELLOTT, concurring and dissenting: I concur in the findings and the portion of the opinion holding that the conveyance by the decedent of a portion of his property to the trust for the benefit of his grandchildren was not made in contemplation of his death. I am not convinced, however, that the facts justify a similar conclusion with reference to the conveyance for the benefit of his children. The fact that he had discussed, and had given consideration to, the making of such conveyance for 15 years but had deferred doing so until he reached the ripe old age of 83 years; that for many years he had apparently been content to dole out his property to his children rather than attempt to teach them how to handle large incomes; and that he was "fully aware of the importance of setting [his] house in order for the inevitable end" 10 years before the conveyance was made, indicate quite clearly that it was made in contemplation of his death rather than for "purposes associated with life." *United States* v. *Wells*, 283 U. S. 102. Accordingly I dissent from the portion of the opinion which holds that the property conveyed by the decedent to the trust for the benefit of his children should not be included in his gross estate.

TURNER agrees with the above.