## HELVERING, COMMISSIONER OF INTERNAL REVENUE, $v.$ HALLOCK ET AL., TRUSTEES.*

No. 110. Argued December 13, 1939.—Decided January 29, 1940.

*Together with No. 111, *Helvering, Commissioner of Internal Revenue, v. Hallock, Executrix,* and No. 112, *Helvering, Commissioner*

of *Internal Revenue*, v. *Squire, Superintendent of Banks of Ohio*, also on writs of certiorari, 308 U. S. 532, to the Circuit Court of Appeals for the Sixth Circuit,—argued December 13, 1939; No. 183, *Rothensies, Collector of Internal Revenue*, v. *Huston, Administrator*, on writ of certiorari, 308 U. S. 538, to the Circuit Court of Appeals for the Third Circuit,—argued December 13, 14, 1939; and No. 399, *Bryant et al., Executors*, v. *Helvering, Commissioner of Internal Revenue*, on writ of certiorari, 308 U. S. 543, to the Circuit Court of Appeals for the Second Circuit,—argued December 14, 1939.

108

Mr. Arnold Raum, with whom Solicitor General Jackson, Assistant Attorney General Clark, and Messrs. Sewall Key and Lee A. Jackson were on the brief, for petitioners in Nos. 110–112, 183, and respondent in No. 399.

Messrs. Walker H. Nye and Ashley M. Van Duzer, with whom Mr. W. B. Stewart was on the brief, for respondents in Nos. 110 and 111. Mr. W. H. Annat submitted for respondent in No. 112. Mr. William R. Spofford, with

whom *Mr. George V. Strong* was on the brief (*Mr. Harold D. Saylor* entered an appearance), for respondent in No. 183.

*Messrs. J. Gilmer Körner, Jr.* and *David S. Day* for petitioners in No. 399.

By leave of Court, *Mr. Blatchford Downing,* as *amicus curiae,* filed a brief in Nos. 111 and 183, urging affirmance.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

These cases raise the same question, namely, whether transfers of property *inter vivos* made in trust, the particulars of which will later appear, are within the provisions of § 302 (c) of the Revenue Act of 1926.[1] They

---

[1] c. 27, 44 Stat. 9, as amended by § 803 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 279:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

. . . . . . . .

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

were heard in succession and may be decided together. In each case the Commissioner of Internal Revenue included the trust property in the decedent's gross estate. In Nos. 110, 111 and 112 his determination was reversed by the Board of Tax Appeals, 34 B. T. A. 575, and the Board was affirmed by the Circuit Court of Appeals for the Sixth Circuit, 102 F. 2d 1. In No. 183, the taxpayer paid under protest, successfully sued for recovery in the District Court for the Eastern District of Pennsylvania, and his judgment was sustained by the Circuit Court of Appeals for the Third Circuit, 103 F. 2d 834. In No. 399, the Commissioner was in part successful before the Board of Tax Appeals, 36 B. T. A: 669, and the Circuit Court of Appeals for the Second Circuit affirmed the Board, 104 F. 2d 1011.

Neither here nor below does the issue turn on the unglossed text of § 302 (c). In its enforcement, Treasury and courts alike encounter three recent decisions of this Court, *Klein* v. *United States*, 283 U. S. 231, *Helvering* v. *St. Louis Trust Co.*, 296 U. S. 39, and *Becker* v. *St. Louis Trust Co., Ibid.* 48. Because of the difficulties which lower courts have found in applying the distinctions made by these cases and the seeming disharmony of their results, when judged by the controlling purposes of the estate tax law, we brought the cases here. All involve dispositions of property by way of trust in which the settlement provides for return or reversion of the corpus to the donor upon a contingency terminable at his death. Whether the transfer made by the decedent in his lifetime is "intended to take effect in possession or enjoyment at or after his death" by reason of that which he retained, is the crux of the problem. We must put to one side questions that arise under sections of the estate tax law other than § 302 (c)—sections, that is, relating to transfers taking place at death. Section 302 (c) deals with

property not technically passing at death but with interests theretofore created. The taxable event is a transfer *inter vivos*. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment.

We turn to the cases which beget the difficulties. In *Klein v. United States, supra,* decided in 1931, the decedent during his lifetime had conveyed land to his wife for her lifetime, "and if she shall die prior to the decease of said grantor then and in that event she shall by virtue hereof take no greater or other estate in said lands and the reversion in fee in and to the same shall in that event remain vested in said grantor, . . ." The instrument further provided, "Upon condition and in the event that said grantee shall survive the said grantor, then and in that case only the said grantee shall by virtue of this conveyance take, have, and hold the said lands in fee simple, . . ." The taxpayer contended that the decedent had reserved a mere "possibility of reverter" and that such a "remote interest," [2] extinguishable upon the grantor's death, was not sufficient to bring the conveyance within the reckoning of the taxable estate. This Court held otherwise. It rejected formal distinctions pertaining to the law of real property as irrelevant criteria in this field of taxation. "Nothing is to be gained," it was said, "by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed." *Klein v. United States, supra,* at 234.

---

[2] Petitioner's Brief, *Klein v. United States,* pp. 11–13

The inescapable rationale of this decision, rendered by a unanimous Court, was that the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor. It refused to subordinate the plain purposes of a modern fiscal measure to the wholly unrelated origins of the recondite learning of ancient property law. Surely the *Klein* decision was not intended to encourage the belief that a change merely in the phrasing of a grant would serve to create a judicially cognizable difference in the scope of § 302 (c), although the grantor retained in himself the possibility of regaining the transferred property upon precisely the same contingency. The teaching of the *Klein* case is exactly the opposite.[3]

In 1935 the *St. Louis Trust* cases came here. A rational application of the principles of the *Klein* case to the situations now before us calls for scrutiny of the particulars in the *St. Louis* cases in order to extract their relation to the doctrine of the earlier decision.

In *Helvering* v. *St. Louis Trust Co., supra,* the decedent had conveyed property in trust, the income of which was to be paid to his daughter during her life, but at her death "If the grantor still be living, the Trustee shall forthwith . . . transfer, pay, and deliver the entire estate to the grantor, to be his absolutely." But "If the grantor be then not living" then the income was to be

---

[3] Some indication of the influence of *Klein* v. *United States* upon the lower courts may be found in *Sargent* v. *White,* 50 F. 2d 410 and *Union Trust Co.* v. *United States,* 54 F. 2d 152, cert. denied, 286 U. S. 547. Cf. *Commissioner* v. *Schwarz,* 74 F. 2d 712.

devoted to the settlor's wife if she were living, and upon the death of both daughter and wife, if he were not living, the trust property was to go to the daughter's children, or if she left none, to the grantor's next of kin.

In *Becker* v. *St. Louis Trust Co.*, *supra*, the decedent had declared himself trustee of property with the income to be accumulated or, at his discretion, to be paid over to his daughter during her life. The instrument further provided that "If the said beneficiary should die before my death, then this trust estate shall thereupon revert to me and become mine immediately and absolutely, or . . . if I should die before her death, then this property shall thereupon become hers immediately and absolutely . . ."

On the authority of the *Klein* case the Commissioner had included in the taxable estates the gifts to which, in the *St. Louis Trust* cases, the grantor's death had given definitive measure. If the wife had predeceased the settlor in the *Klein* case, he would have been repossessed of his property. His wife's interests were freed from this contingency by the husband's prior death, and because of the effect of his death this Court swept the gift into the gross estate. So in *Helvering* v. *St. Louis Trust Co.*, the grantor would have become repossessed of the granted corpus had his daughter predeceased him. But he predeceased her and by that event her interest ripened to full dominion. The same analysis applies to the *Becker* case. In all three situations the result and effect were the same. The event which gave to the beneficiaries a dominion over property which they did not have prior to the donor's death was an act of nature outside the grantor's "control, design or volition." 296 U. S. 39, 43. But it was no more and no less "fortuitous," so far as the grantor's "control, design or volition" was concerned, in the *St.*

*Louis Trust* cases than it was in the *Klein* case. In none of the three cases did the dominion over property which finally came to the beneficiary fall by virtue of the grantor's will, except by his provision that his own death should establish such final and complete dominion. And yet a mere difference in phrasing the circumstance by which identic interests in property were brought into being—varying forms of words in the creation of the same worldly interests—was found sufficient to exclude the *St. Louis Trust* settlements from the application of the *Klein* doctrine.

Four members of the Court saw no difference. They relied on the governing principle of § 302 (c) that Congress meant to include in the gross estate *inter vivos* gifts "which may be resorted to, as a substitute for a will, in making dispositions of property operative at death." 296 U. S. at 46. To effectuate this purpose practical considerations applicable to taxation and not the "niceties of the art of conveyancing" were their touchstone. "Having in mind," said the dissenters, "the purpose of the statute and the breadth of its language it would seem to be of no consequence what particular conveyancers' device—what particular string—the decedent selected to hold in suspense the ultimate disposition of his property until the moment of his death. In determining whether a taxable transfer becomes complete only at death we look to substance, not to form . . . However we label the device it is but a means by which the gift is rendered incomplete until the donor's death." 296 U. S. at 47. For the majority in the *St. Louis Trust Company* cases, these practicalities had less significance than the formal categories of property law. The grantor's death, the majority said, in *Helvering* v. *St. Louis Trust Co.*, "simply put an end to what, at best, was a mere possibility of a reverter by extinguishing it—that is to say, by converting what was merely possible into an utter impossibility." 296 U. S.

39, 43. This was precisely the mode of argument which had been rejected in *Klein* v. *United States, supra.*

We are now asked to accept all three decisions as constituting a coherent body of law, and to apply their distinctions to the trusts before us.

In Nos. 110, 111 and 112 (*Helvering* v. *Hallock*) the decedent in 1919 created a trust under a separation agreement, giving the income to his wife for life, with this further provision:

"If and when Anne Lamson Hallock shall die then and in such event . . . the within trust shall terminate and said Trustee shall . . . pay Party of the First Part if he then be living any accrued income then remaining in said trust fund and shall . . . deliver forthwith to Party of the First Part, the principal of the said trust fund. If and in the event said Party of the First Part shall not be living then and in such event payment and delivery over shall be made to Levitt Hallock and Helen Hallock, respectively son and daughter of the Party of the First Part share and share alike . . ."

When the settlor died in 1932, his divorced wife, the life beneficiary, survived him. The Circuit Court of Appeals held that the trust instrument had conveyed the "whole interest" of the decedent, subject only to a "condition subsequent," which left him nothing "except a mere possibility of reverter." *Commissioner* v. *Hallock,* 102 F. 2d 1, 3–4.

In No. 183 (*Rothensies* v. *Huston*) the decedent by an ante-nuptial agreement in 1925 conveyed property in trust, the income to be paid to his prospective wife during her life, subject to the following disposition of the principal:

"In trust if the said Rae Spektor shall die during the lifetime of said George F. Uber to pay over the principal and all accumulated income thereof unto the said George F. Uber in fee, free and clear of any trust.

"In trust if the said Rae Spektor after the marriage shall survive the said George F. Uber to pay over the principal and all accumulated income unto the said Rae Spektor—then Rae Uber—in fee, free and clear of any trust."

Mrs. Uber outlived her husband, who died in 1934. The Circuit Court of Appeals deemed *Becker* v. *St. Louis Trust Co.* controlling against the inclusion of the trust corpus in the gross estate.

Finally, in No. 399 (*Bryant* v. *Helvering*), the testator provided for the payment of trust income to his wife during her life and upon her death to the settlor himself if he should survive her. The instrument, which was executed in 1917, continued:

"Upon the death of the survivor of said Ida Bryant and the party of the first part, unless this trust shall have been modified or revoked as hereinafter provided, to convey, transfer, and pay over the principal of the trust fund to the executors or administrators of the estate of the party hereto of the first part."

There was a further provision giving to the decedent and his wife jointly during their lives, and to either of them after the death of the other, power to modify, alter or revoke the instrument. The wife survived the husband, who died in 1930. The Board of Tax Appeals allowed the Commissioner to include in the decedent's gross estate only the value of a "vested reversionary interest" which the Board held the grantor had reserved to himself. On appeal by the tax-payer, the Circuit Court of Appeals sustained this determination.

The terms of these grants differ in detail from one another, as all three differ from the formulas of conveyance used in the Klein and St. Louis Trust cases. It therefore becomes important to inquire whether the technical forms in which interests contingent upon death

are cast should control our decision. If so, it becomes necessary to determine whether the differing terms of conveyance now in issue approximate more closely those used in the Klein case and are therefore governed by it, or have a greater verbal resemblance to those that saved the tax in the St. Louis Trust cases. Such an essay in linguistic refinement would still further embarrass existing intricacies. It might demonstrate verbal ingenuity, but it could hardly strengthen the rational foundations of law. The law of contingent and vested remainders is full of casuistries. There are great diversities among the several states as to the conveyancing significance of like grants; sometimes in the same state there are conflicting lines of decision, one series ignoring the other. Attempts by the Board of Tax Appeals and the Circuit Courts of Appeal to administer § 302 (c) by reference to these distinctions abundantly illustrate the inevitable confusion.[4] One of the cases at bar, No. 399, reveals vividly the snares which inevitably await an attempt to base estate tax law on the "niceties of the art of conveyancing." In connection with the ascertainment of its own death duties, the Supreme Court of Errors of Connecticut defined the nature of the interest which the decedent in that case retained after his *inter vivos* transfer. *Bryant* v. *Hackett,* 118 Conn. 233; 171 A. 664. And yet the nature of that interest under Connecticut law and the scope of the Connecticut court's adjudication of that interest were made the subject of lively controversy be-

---

[4] See, for example, the attempts by the Board of Tax Appeals to deal with the peculiarities of New York law in the field of vested and contingent remainders. Elizabeth B. Wallace, 27 B. T. A. 902; Louis C. Raegner, Jr., 29 B. T. A. 1243. In both of these cases limitations which would probably have been "contingent" at "common law" were held to be "vested" under the New York statutory rule. Cf. *Commissioner* v. *Schwarz,* 74 F. 2d 712; Flora M. Bonney, 29 B. T. A. 45.

fore us. The importation of these distinctions and controversies from the law of property into the administration of the estate tax precludes a fair and workable tax system. Essentially the same interests, judged from the point of view of wealth, will be taxable or not, depending upon elusive and subtle casuistries which may have their historic justification but possess no relevance for tax purposes.[5] These unwitty diversities of the law of property derive from medieval concepts as to the necessity of a continuous seisin.[6] Distinctions which originated under a feudal economy when land dominated social relations are peculiarly irrelevant in the application of tax measures now so largely directed toward intangible wealth.

Our real problem, therefore, is to determine whether we are to adhere to a harmonizing principle in the construction of § 302 (c), or whether we are to multiply gossamer distinctions between the present cases and the three earlier ones. Freed from the distinctions introduced by the *St. Louis Trust* cases, the *Klein* case furnishes such a harmonizing principle. Does, then, the doctrine of *stare decisis* compel us to accept the distinc-

---

[5] Cf. *Lyeth* v. *Hoey*, 305 U. S. 188, 194. See Paul, The Effect on Federal Taxation of Local Rules of Property in Selected Studies in Federal Taxation (2nd Series), pp. 23–28; Developments in the Law—Taxation, 47 Harv. L. Rev. 1209, 1238–41; Note, 49 Harv. L. Rev. 462.

[6] See, for example, Fearne, Contingent Remainders, (4th Am. Ed.), pp. 3–241; Gray, Rule Against Perpetuities (2nd Ed.), pp. 99–118; VII Holdsworth, History of English Law, 81 *et seq.*; 1 Simes, Future Interests, §§ 64–96. The confusion apt to be engendered by judicial forays into this field is well illustrated by the use of the term "possibility of reverter" by the majority in *Helvering* v. *St. Louis Union Trust Co.* "A possibility of reverter" is traditionally defined as the interest remaining in a grantor who has conveyed a determinable fee. The definition has not been thought to have any relation to the reversionary interest of a grantor who has transferred either a vested or contingent remainder in fee. See Gray, Rule Against Perpetuities (2nd Ed.), §§ 13–51.

tions made in the *St. Louis Trust* cases as starting points for still finer distinctions spun out of the tenuosities of surviving feudal law? We think not. We think the *Klein* case rejected the presupposition of such distinctions for the fiscal judgments which § 302 (c) demands.

We recognize that *stare decisis* embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But *stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.

Nor have we in the *St. Louis Trust* cases rules of decision around which, by the accretion of time and the response of affairs, substantial interests have established themselves. No such conjunction of circumstances requires perpetuation of what we must regard as the deviations of the *St. Louis Trust* decisions from the *Klein* doctrine. We have not before us interests created or maintained in reliance on those cases. We do not mean to imply that the inevitably empiric process of construing tax legislation should give rise to an estoppel against the responsible exercise of the judicial process. But it is a fact that in all the cases before us the settlements were made and the settlors died before the *St. Louis Trust* decisions.

Nor does want of specific Congressional repudiations of the *St. Louis Trust* cases serve as an implied instruction by Congress to us not to reconsider, in the light of new experience, whether those decisions, in conjunction with the *Klein* case, make for dissonance of doctrine. It would require very persuasive circumstances enveloping Congressional silence to debar this Court from reexamining its own doctrines. To explain the cause of

120

non-action by Congress when Congress itself sheds no light is to venture into speculative unrealities.[7] Congress may not have had its attention directed to an undesirable decision; and there is no indication that as to the *St. Louis Trust* cases it had, even by any bill that found its way into a committee pigeon-hole. Congress may not have had its attention so directed for any number of reasons that may have moved the Treasury to stay its hand. But certainly such inaction by the Treasury can hardly operate as a controlling administrative practice, through

[7] We are not unmindful of amendments to the estate tax law to which other decisions of this Court gave rise. Thus by § 805 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, Congress undid the construction which this Court gave the estate tax law in another connection by a decision rendered on the same day as were the *St. Louis Trust* cases. Cf. *White* v. *Poor*, 296 U. S. 98. This case arose under § 302 (d) and not § 302 (c). But, in any event, the fact of Congressional action in dealing with one problem while silent on the different problems created by the *St. Louis Trust* cases, does not imply controlling acceptance by Congress of those cases.

By the Joint Resolution of March 3, 1931, c. 454, 46 Stat. 1516, Congress displaced the construction which this Court put upon § 302 (c) in those cases wherein it was held that the reservation by a decedent of a life estate in property conveyed *inter vivos,* did not constitute a sufficient postponement of the remainder to bring it into the grantor's gross estate. *May* v. *Heiner,* 281 U. S. 238; *Burnet* v. *Northern Trust Co.,* 283 U. S. 782; *Morsman* v. *Burnet,* 283 U. S. 783; *McCormick* v. *Burnet,* 283 U. S. 784. The speculative arguments that may be drawn from *ad hoc* legislation affecting one set of decisions and the want of such legislation to modify another set of decisions dealing with a somewhat different though cognate problem are well illustrated by this remedial amendment. For it may be urged with considerable plausibility that in 1931 Congress had in principle already rejected the general attitude underlying the *St. Louis Trust* cases, as illustrated by the fact that in those cases the majority, in part at least, relied upon the Congressionally discarded *May* v. *Heiner* doctrine.

Whatever may be the scope of the doctrine that re-enactment of a statute impliedly enacts a settled judicial construction placed upon the re-enacted statute, that doctrine has no relevance to the present

acquiescence, tantamount to an estoppel barring reëxamination by this Court of distinctions which it had drawn.[8] Various considerations of parliamentary tactics and strategy might be suggested as reasons for the inaction of the Treasury and of Congress, but they would only be sufficient to indicate that we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.

This Court, unlike the House of Lords,[9] has from the beginning rejected a doctrine of disability at self-correction. Whatever else may be said about want of Congressional action to modify by legislation the result in the *St. Louis Trust* cases, it will hardly be urged that the rea-

---

problem. Since the decisions in the *St. Louis Trust* cases, Congress has not re-enacted § 302 (c). The amendments that Congress made to other provisions of § 302 in connection with other situations than those now before the Court, were made without re-enacting § 302 (c). Nor has Congress, under any rational canons of legislative significance, by its compilation of internal revenue laws to form the Internal Revenue Code of 1939, 53 Stat. 1, impliedly enacted into law a particular decision which, in the light of later experience, is seen to create confusion and conflict in the application of a settled principle of internal revenue legislation.

Here, unlike the situation in such cases as *National Lead Co.* v. *United States*, 252 U. S. 140, 146–47, and *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299, 302–3, we have no conjunction of long, uniform administrative construction and subsequent re-enactments of an ambiguous statute to give ground for implying legislative adoption of such construction. See Preface, Internal Revenue Code, 53 Stat. III; compare *Smiley* v. *Holm*, 285 U. S. 355, 373, and *Warner* v. *Goltra*, 293 U. S. 155, 161.

[8] Since the Treasury has amended its regulations in an effort to conform administrative practice to the compulsions of the *St. Louis Trust* cases, it cannot be deemed to have bound itself by this change. Art. 17, Reg. 80 (1937 Ed.), p. 42. Cf. *Estate of Sanford* v. *Commissioner*, 308 U. S. 39.

[9] *London Street Tramways Co.* v. *London County Council*, [1898] A. C. 375. But the rule is otherwise in the Privy Council. *Read* v. *Bishop of Lincoln*, [1892] A. C. 644, 655. For the rôle of precedent

son was Congressional approval of those distinctions between the *St. Louis Trust* and the *Klein* cases to which four members of this Court could not give assent. By imputing to Congress a hypothetical recognition of coherence between the *Klein* and the *St. Louis Trust* cases, we cannot evade our own responsibility for reconsidering in the light of further experience, the validity of distinctions which this Court has itself created. Our problem then is not that of rejecting a settled statutory construction. The real problem is whether a principle shall prevail over its later misapplications. Surely we are not bound by reason or by the considerations that underlie *stare decisis* to persevere in distinctions taken in the application of a statute which, on further examination, appear consonant neither with the purposes of the statute nor with this Court's own conception of it. We therefore reject as untenable the diversities taken in the *St. Louis Trust* cases in applying the *Klein* doctrine—untenable because they drastically eat into the principle which those cases professed to accept and to which we adhere.

In Nos. 110, 111, 112 and 183, the judgments are

*Reversed.*

In No. 399, the judgment is

*Affirmed.*

The CHIEF JUSTICE concurs in the result upon the ground that each of these cases is controlled by our decision in *Klein* v. *United States*, 283 U. S. 231.

---

in English law, see, *inter alia*, 2 Yorke, Life of Lord Chancellor Hardwicke, pp. 425, 498; Goodhart, Precedent in English and Continental Law, 50 L. Q. Rev. 40; Holdsworth, Case Law, *ibid*. 180; Lord Wright in *Westminster Council* v. *Southern Ry. Co.*, [1936] A. C. 511, 562–63; Allen, Law in the Making, 2rd ed., pp. 224 *et seq.*

Mr. JUSTICE ROBERTS, dissenting.

There is certainly a distinction in fact between the transaction considered in *Klein* v. *United States*, 283 U. S. 231, and those under review in *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, and *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48. The courts, the Board of Tax Appeals, and the Treasury have found no difficulty in observing the distinction in specific cases. I believe it is one of substance, not merely of terminology, and not dependent on the niceties of conveyancing or recondite doctrines of ancient property law.

But if I am wrong in this, I still think the judgments in Nos. 110–112, and 183 should be affirmed and that in 399 should be reversed. The rule of interpretation adopted in the *St. Louis Union Trust Company* cases should now be followed for two reasons: *First,* that rule was indicated by decisions of this court as the one applicable in the circumstances here disclosed, as early as 1927; was progressively developed and applied by the Board of Tax Appeals, the lower federal courts, and this court, up to the decision of *McCormick* v. *Burnet,* 283 U. S. 784, in 1931; and has since been followed by those tribunals in not less than fifty cases. It ought not to be set aside after such a history. *Secondly.* The rule was not contrary to any treasury regulation; was, indeed, in accord with such regulations as there were on the subject; was subsequently embodied in a specific regulation, and, with this background, Congress has three times reënacted the law without amending § 302 (c) in respect of the matter here in issue. The settled doctrine, that reënactment of a statute so construed, without alteration, renders such construction a part of the statute itself, should not be ignored but observed.

1. The Revenue Act of 1926 lays a tax upon the transfer of the net estate of a decedent. That estate is defined to embrace the value of all his property, real or personal, tangible or intangible (less certain deductions), at the time of his death.[1] As the Treasury Department stated in its earliest regulations: "The statute also includes only property rights existing in the decedent in his lifetime and passing to his estate."[2] In all the treasury regulations, from the earliest to the one now in force, applicable to the relevant sections of the successive Revenue Acts defining the "gross estate" of a decedent the Treasury has used this language:[3]

"The value of a vested remainder should be included in the gross estate. Nothing should be included, however, on account of a contingent remainder where [in the case] the contingency does not happen in the lifetime of the decedent, *and the interest consequently lapses at his death.*" [Italics supplied.]

The next sentence: "Nor should anything be included on account of a life estate in the decedent," has been repeated in substance in the corresponding article of all subsequent regulations.

If by the will of his grandmother, A is given a life estate, with remainder to another, his executor is not bound to return anything on account of the life estate because, in respect of it, nothing passes on A's death. The estate simply ceases. The Treasury has never contended the contrary. If, however, A's grandmother gave a life estate to B, and the remainder to A, A has something which, at his death, will pass to someone else under his will, or under the intestate laws. The statute plainly taxes the value of the interest thus transferred at A's death.

[1] §§ 300–303, 44 Stat. 69–72.
[2] Regulations 37, Art. 12 (1917).
[3] Regulations 37, Art. 12; Regulations 63, Art. 11; Regulations 68, Art. 11; Regulations 80, Art. 11.

If A's grandmother, by her will, gave interests in succession to specific persons and then provided that if A should outlive all these persons the property should pass to him, A would have a chance to receive and enjoy the property. If he did so receive it, it would pass as part of his estate. If he died before the other beneficiaries named by his grandmother his death would deprive him of that chance. The chance would not pass to anyone else. No tax would be laid on the supposed value of his contingent interest or chance, because the chance cannot, at his death, pass by his will, or the intestate laws, to another. I do not understand the Government has ever denied this.

Subsection (c) of § 302 lays down no different rule respecting similar interests created by irrevocable deed or agreement of the decedent. The subsection directs that there shall be included in the gross estate the value, at the time of the decedent's death, of any interest in property of which the decedent has at any time made a *transfer* "intended *to take effect* in possession or enjoyment *at* or after his *death*" (excluding sales for adequate consideration).

A transfer can only take effect, within the meaning of the statute, by the shifting of possession or enjoyment from the decedent to living persons. The fact that the terms of the gift bring about some other effect at the decedent's death is immaterial. The fact that something may happen in respect of the beneficial enjoyment of the property conditioned upon the decedent's death is irrelevant so long as that something is not the shifting of possession or beneficial enjoyment from the decedent. This is made clear by *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 347.

If A makes a present irrevocable transfer in trust, conditioned that he shall receive the income for life and, at his death, the principal shall go to B, B is at once legally

invested with the principal. A's life estate ceases at his death. Nothing then passes. There is no tax imposed by the statute because there is no transfer any more than there would be in the case of a similar life estate given A by his grandmother. (This is *May* v. *Heiner,* 281 U. S. 238.) If, on the other hand, A creates an estate for years or for life in B, retaining the remaining beneficial interest in the property for himself, and, whether by the terms of the grant, or by the terms of A's will, or under the intestate law, that remainder passes to someone else at his death, such passage renders the transfer taxable. (This is *Klein* v. *United States, supra.*) If what A does is to transfer his property irrevocably, with provision that it shall be enjoyed successively by various persons for life and then go absolutely to a named person, but that if he, A, shall outlive that person, the property shall come back to him, and A dies in the lifetime of the person in question, A has merely lost the chance that the beneficial ownership of the property may revert to him. That chance cannot pass under his will or under the intestate laws. As there is no transfer which can become effective at his death by the shifting of any interest from him, no tax is imposed. (This is *McCormick* v. *Burnet, supra,* and *Helvering* v. *St. Louis Union Trust Company, supra.*)

2. These governing principles were indicated as early as 1927 [4] and were thereafter developed, in application to specific cases, in a consistent line of authorities.

In *May* v. *Heiner, supra,* it was held that a transfer in trust under which the income was payable to the transferor's husband for his life and, after his death, to the transferor during her life, with remainder to her children, was not subject to tax as a transfer intended to take effect

[4] *Shukert* v. *Allen,* 273 U. S. 545.

in possession or enjoyment at or after death. This court said (p. 243):

". . . At the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death *was obliterated by that event.*" [Italics supplied.]

It will be noted that this is the equivalent of the Treasury's statement, *supra,* that such an interest lapses at death.

That decision is indistinguishable in principle from the *St. Louis Union Trust Company* cases and the instant cases; and what was there said serves to distinguish the *Klein* case.

*McCormick* v. *Burnet* followed *May* v. *Heiner.* The court there held that neither a reservation by the grantor of a life estate with remainders over, nor a provision for a reverter in case all the beneficiaries should die in the lifetime of the grantor, made the gifts transfers intended to take effect in possession or enjoyment at or after the grantor's death. In the Circuit Court of Appeals the Commissioner urged that the provision for payment of the trust estate to the settlor in case she survived all the beneficiaries rendered the transfer taxable. That court dealt at length with the point and sustained his view. (43 F. 2d 277, 279.) The Commissioner made the same contention in this court, but it was overruled upon the authority of *May* v. *Heiner.*

Then came the two *St. Louis Union Trust Company* cases, decided upon the authority of *May* v. *Heiner* and *McCormick* v. *Burnet.* Finally, the *McCormick* case was followed in *Bingham* v. *United States,* 296 U. S. 211.

Since the opinion of the court appears to treat the *St. Louis* cases as the origin of the principle there announced,

128

it is important to emphasize the fact that the rule had been settled by this court as early as 1930; and to note other decisions rendered prior to the *St. Louis* cases. In seven, intervening between *May* v. *Heiner* and the *St. Louis* cases, the Board of Tax Appeals reached the same conclusion as that announced in the *St. Louis* cases.[5] The Board's action was affirmed in four of them.[6] Four other decisions by Circuit Courts of Appeals were to the same effect.[7] In practically all, reliance was placed upon *Shukert* v. *Allen, Reinecke* v. *Northern Trust Company,* *May* v. *Heiner,* and *McCormick* v. *Burnet,* or some of them. Thus, when the question came before this court again in the *St. Louis* cases, there was a substantial body of authority following and applying the *Heiner* and *McCormick* cases.

Since the *St. Louis* cases were decided, the principle on which they went has been repeatedly applied by the Board of Tax Appeals and the courts. The Board has followed the cases in no less than seventeen instances.[8]

[5] Wheeler *v.* Commissioner, 20 B. T. A. 695; Duke *v.* Commissioner, 23 B. T. A. 1104; Peabody *v.* Commissioner, 24 B. T. A. 787; Dunham *v.* Commissioner, 26 B, T. A. 286; Taylor *v.* Commissioner, 27 B. T. A. 220; Wallace *v.* Commissioner, 27 B. T. A. 902; Bonney *v.* Commissioner, 29 B. T. A. 45.

[6] *Commissioner* v. *Duke,* 62 F. 2d 1057 (affirmed by an equally divided court, 290 U. S. 591); *Commissioner* v. *Wallace,* 71 F. 2d 1002; *Commissioner* v. *Dunham,* 73 F. 2d 752; *Commissioner* v. *Bonney,* 75 F. 2d 1008.

[7] *Commissioner* v. *Austin,* 73 F. 2d 758; *Tait* v. *Safe Deposit & Trust Co.,* 74 F. 2d 851; *Tait* v. *Safe Deposit & Trust Co.,* 78 F. 2d 534; *Helvering* v. *Helmholz,* 64 App. D. C. 114; 75 F. 2d 245. I have been able to find only one case decided *contra: Commissioner* v. *Schwarz,* 74 F. 2d 712.

[8] Taft *v.* Commissioner, 33 B. T. A. 671; Guaranty Trust Co. *v.* Commissioner, 33 B. T. A. 1225; Kneeland *v.* Commissioner, 34 B. T. A. 816; Kienbusch *v.* Commissioner, 34 B. T. A. 1248; Schneider *v.* Commissioner, 35 B. T. A. 183; Van Sicklen *v.* Commissioner, 35

The record is the same in the courts. The *St. Louis* cases have been followed in fourteen cases.[9] In some of these the Government has sought review in this court but in none, except those now presented, has it asked the court to overrule those decisions.

If there ever was an instance in which the doctrine of *stare decisis* should govern, this is it. Aside from the obvious hardship involved in treating the taxpayers in the present cases differently from many others whose cases have been decided or closed in accordance with the settled rule, there are the weightier considerations that the judgments now rendered disappoint the just expectations of those who have acted in reliance upon the uniform construction of the statute by this and all other federal tribunals; and that, to upset these precedents now, must necessarily shake the confidence of the bar and the public in the stability of the rulings of the courts and make it impossible for inferior tribunals to adjudicate controversies in reliance on the decisions of this court. To nullify more than fifty decisions, five of them by this

B. T. A. 306; Patterson *v.* Commissioner, 36 B. T. A. 407; Rushmore *v.* Commissioner, 36 B. T. A. 480; Bryant *v.* Commissioner, 36 B. T. A. 669; Wetherill *v.* Commissioner, 36 B. T. A. 1259; Mitchell *v.* Commissioner, 37 B. T. A. 1; Stone *v.* Commissioner, 38 B. T. A. 51; The George D. Harter Bank *v.* Commissioner, 38 B. T. A. 387; White *v.* Commissioner, 38 B. T. A. 593; Donnelly *v.* Commissioner, 38 B. T. A. 1234; Pyeatt *v.* Commissioner, 39 B. T. A. 774; Dravo *v.* Commissioner, 40 B. T. A. 309.

[9] *Old Colony Trust Co.* v. *United States,* 15 F. Supp. 417; *Myers* v. *Magruder,* 15 F. Supp. 488; *Chase National Bank* v. *United States,* 28 F. Supp. 947; *Commissioner* v. *Brooks,* 87 F. 2d 1000; *Bullard* v. *Commissioner,* 90 F. 2d 144; *Welch* v. *Hassett,* 90 F. 2d 833; *United States* v. *Nichols,* 92 F. 2d 704; *Mackay* v. *Commissioner,* 94 F. 2d 558; *Commissioner* v. *Grosse,* 100 F. 2d 37; *Commissioner* v. *Hallock,* 102 F. 2d 1; *Commissioner* v. *Kaplan,* 102 F. 2d 329; *Rothensies* v. *Cassell,* 103 F. 2d 834; *Corning* v. *Commissioner,* 104 F. 2d 329; *Rheinstrom* v. *Commissioner,* 105 F. 2d 642.

court, some of which have stood for a decade, in order to change a mere rule of statutory construction, seems to me an altogether unwise and unjustified exertion of power. As I shall point out, there is no necessity for such action because it has been, and still is open to Congress to change the rule by amendment of the statute, if it deems such action necessary in the public interest.

3. Section 301 of the Revenue Act of 1926 imposes a tax upon the value of the net estate of a decedent. Section 302 provides the method for determining the value of the gross estate. Subsections (c) (d) (e) (f) and (g) require inclusion in the gross estate of interests which otherwise might be held not to form a part of the decedent's estate or not to pass from him to others at his death. These subsections sweep such interests into the gross estate in order to forestall tax avoidance. Section 302 (c) was the successor of analogous sections in earlier acts and the predecessor of similar sections in later acts.[10] The subsection has been amended in successive Revenue Acts. As a result of the Treasury's experience in the enforcement of the law, Congress has from time to time thought it necessary to extend the scope of the subsection in the interest of more efficient administration. Within constitutional limits such extension is a matter of legislative policy for Congress alone.[11]

It is familiar practice for Congress to amend a statute to obviate a construction given it by the courts. The legislative history of § 302 (c) demonstrates that Congress has elected not to make such an amendment to

[10] Revenue Act of 1916, § 202 (b), 39 Stat. 756, 777; Revenue Act of 1918, § 402 (c), 40 Stat 1057, 1097; Revenue Act of 1924, § 302 (c), 43 Stat. 253, 304; Revenue Act of 1932, § 803 (a), 47 Stat. 169, 279; Internal Revenue Code of 1939, § 811 (c), 53 Stat., Part 1, 1, 121.

[11] *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85.

meet the construction placed upon it by this court in the *St. Louis* cases.

*May* v. *Heiner* was decided in 1930. The Treasury was dissatisfied with the decision and in three later cases attacked the ruling, amongst them *McCormick* v. *Burnet*. The court announced its judgments in these cases on March 2, 1931, reaffirming *May* v. *Heiner*. On the following day Congress adopted a joint resolution amending § 302 (c) to tax a transfer with reservation of a life estate to the grantor, but, in so doing, it omitted to deal with a contingent interest reserved to the grantor or the possibility of reverter remaining in him, involved in both *Heiner* and *McCormick*. See *Hassett* v. *Welch,* 303 U. S. 303, 308–9. The omission is significant.

It may be argued that in the haste of preparing and passing the amendment the point was overlooked. But the joint resolution was reënacted by § 803 of the Revenue Act of 1932,[12] without any alteration to cover the point. The Revenue Act of 1934 [13] amended § 302 (d) of the Revenue Act of 1926 but did not change § 302 (c) as it then stood.

The day the *St. Louis* cases were decided, this court announced its opinion in *White* v. *Poor,* 296 U. S. 98, construing § 302 (d) of the Act of 1926. In order to make the section apply to such a situation as was disclosed in that case [14] the Congress, on June 22, 1936, by the Act of 1936,[15] amended it to preclude the construction the court had given it. Again Congress let § 302 (c) stand as before and as construed in the *St. Louis* cases.

---

[12] 47 Stat. 169, 279.

[13] 48 Stat. 680, 752.

[14] House Report on H. R. 12793.

[15] 49 Stat. 1648, 1744.

Three revenue acts have since been adopted,[16] in none of which has the wording of § 302 (c) been altered. If there is any life in the doctrine often announced that reënactment of a statute as uniformly construed by the courts is an adoption by Congress of the construction given it, this legislative history ought to be conclusive that the statute, as it now stands, means what this court has said it means.

Little weight can be given to the argument of the Government that the Treasury has not applied to Congress for alteration of the section because of the difficulty of wording a satisfactory amendment. A moment's reflection will show that it would be easy to phrase such an amendment. Whatever the reason for the failure to amend § 302 (c), whether hesitancy on the part of the Treasury to recommend such action, or the satisfaction of Congress with the construction put upon the section by this court, or mere inadvertence, the fact remains that the section has been reënacted again and again with the courts' construction plain for all to read.

4. As shown by the matter above quoted from the Treasury Regulations affecting the estate tax,[17] a contingent interest is not to be included in the taxable estate. In the light of this construction, estate tax provisions were reënacted or amended in 1921, 1924, 1926, 1928, 1931, 1932, 1934, 1935, 1936 and 1937.

At the bar, counsel for the Government stated that it had always been the view of the Treasury that the article in question applied only to § 302 (a) and had no application to § 302 (c). But we are not concerned with what the Treasury thought about the matter. The regulations were issued to guide taxpayers in complying with the Act. Section 302 is an entirety. Subsections (a) and (c) were

---

[16] Revenue Act of 1937, 50 Stat. 813; Revenue Act of 1938, 52 Stat. 447; Internal Revenue Code, 53 Stat., Part 1, p. 1.

[17] See Note 3, *supra*.

not intended to contradict each other, but the latter was to supplement the former. The gross estate was to be computed according to the section as a whole. It is hard to understand how the taxpayer was expected to discriminate between a contingent interest of a decedent under the will of his grandmother and a similar interest under an absolute deed executed by him *inter vivos.* If the one did not pass from the decedent at death neither did the other.

After the decisions in the *St. Louis* cases, the Treasury rendered its regulations even more explicit. In Regulations 80 (Revised), promulgated October 26, 1937, a new Article 17 was inserted which is:

"The statutory phrase, 'a transfer . . . intended to take effect in possession or enjoyment at or after his death,' includes a transfer by the decedent . . . whereby and to the extent that the beneficial title to the property . . . or the legal title thereto . . . remained in the decedent at the time of his death and the passing thereof was subject to the condition precedent of his death. . . .

"On the other hand, if, as a result of the transfer, there remained in the decedent at the time of his death no title or interest in the transferred property, then no part of the property is to be included in the gross estate merely by reason of a provision in the instrument of transfer to the effect that the property was to revert to the decedent upon the predecease of some other person or persons or the happening of some other event."

If theretofore doubt could have been entertained, it then must have vanished. And with this regulation in force, Congress reënacted § 302 (c) as so interpreted.

What, then, is to be said of the principle that reënactment of a statute which the Treasury, by its regulations, has interpreted in a given sense is an embodiment of the interpretation in the law as reënacted? Surely the principle cannot be avoided, as the Government argues, be-

cause the Treasury felt bound so to interpret § 302 (c) by reason of this court's decisions. That fact should make application of the principle the more urgent.

MR. JUSTICE McREYNOLDS joins in this opinion.