1090

Fontana Power Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 99767.   Promulgated March 21, 1941.

*George Hellyer, Esq.*, and *James W. Bontems, C. P. A.*, for the petitioner.

*Samuel Taylor, Esq.*, for the respondent.

**1094**

OPINION.

KERN: In the original petition filed with this Board the taxpayer claimed that the amounts paid to the Water Co. under the agreement were deductible as "rentals or other payments" within the meaning of section 23 (a) of the Revenue Acts of 1934 and 1936. Petitioner has apparently abandoned that theory, and properly so, inasmuch as title to the properties conveyed was passed to the taxpayer, whereas section 23 (a) applies only to properties to which the taxpayer has not or is not taking title or in which he has no equity. Petitioner, however, does assert that the payments to the Water Co. should be considered as analogous to the payments of Maryland and Pennsylvania ground rents, which, if the ground rent is irredeemable, should be deductible to the extent they constitute a proper business expense pursuant to the general language of section 23 (a) and without regard to the specific clause having to do with rentals. This ingenious argument is without validity. The contract does not call for the payment of ground rents. It provides for a method by which a purchase price for the property granted to petitioner may at some future time be determined if the parties should choose to do so, and, pending such determination, provides for payment to the grantors, who held all of petitioner's stock (with the exception of qualifying shares), of all of petitioner's net earnings. We are not disposed to construe such a contract, executed in California by California corporations and having as its subject matter California real estate, in a way which introduces into that commonwealth the feudal relics of real property law which have happened to survive because of historical reasons in the two states of Pennsylvania and Maryland. We are equally unwilling to draw analogies in any interpretation of the revenue laws from "distinctions spun out of the tenuosities of surviving feudal law", to use a phrase of Mr. Justice Frankfurter in his opinion in *Helvering* v. *Hallock*, 309 U. S. 106.

By amendment to his original petition, the taxpayer now makes the further claim that the amounts in controversy are deductible as interest payments by virtue of section 23 (b). It appears from the stipulation filed in this proceeding that the Water Co. has been held by the Bureau of Internal Revenue to be exempt under section 101 of the Revenue Acts of 1934 and 1936 from income and capital stock taxation, but petitioner has not claimed exemption under section 101 (14); nor could such a claim be sustained had it been advanced. The issue before us is whether the disputed payments must be called interest payments or distribution of profits in the nature of dividends.

Both parties to this proceeding have cited numerous cases in their briefs in support of their respective contentions. The cited cases do not lay down any comprehensive rule which may be applied in all cases; and in each proceeding of this nature it must be determined on the facts presented whether the real transaction was that of an investment in the corporation or a loan to it. *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792. On this question the designation of the instrument and the terms therein incorporated, while not to be ignored, are not conclusive. *I. Unterberg & Co.*, 2 B. T. A. 274. The real intent of the parties is to be ferreted out and for this latter purpose evidence *aliunde* the contract is admissible. *Proctor Shop, Inc.*, *supra*. In a majority of the cases of this nature which have come before this Board the instrument issued by the corporation has been some form of stock certificate. In the instant proceeding the provision for payment of petitioner's earnings to the Water Co. is not found on the capital stock certificates, but in the same agreement under which petitioner issued the 100 shares of capital stock to the Water Co.

The Water Co. advanced properties and property rights to the petitioner. It was not money which was advanced, but assets which had a monetary value. Had the Water Co. wanted to treat the transaction merely as a loan, with a definite annual income, in the nature of interest, from the transaction, it could have demanded a certain fixed payment from the petitioner each year until a certain fixed date, when the principal should become unconditionally due. The value of the properties transferred was, however, not agreed upon at the time of the transaction.

Let us look at petitioner's condition at the time of the transaction. It had a charter and an option to purchase certain piping, but these appear to have been its sole assets. It was desirous of securing a franchise and for this purpose needed the assets which the Water Co. transferred pursuant to the agreement in question. It, in turn, borrowed from the bank in order to purchase and erect the building, pipe lines, etc., on the properties, and, in exchange for this loan, issued $350,000 worth of 6 percent first mortgage bonds. The bonds were specifically secured by all the interest of petitioner in and to any of

its properties held at that time, or property interests to be acquired in the future, including the benefits to be received from a 30-year lease which petitioner made with the Edison Co., under which all its properties were turned over for that term to the Edison Co.

The basic transaction was the one between the Fontana Co. and Water Co. and petitioner. Unless petitioner could have acquired some assets to start with, it would not have been able to carry out either of the other two transactions. The president and treasurer of the Water Co. and the Fontana Co. had become the president and treasurer of petitioner. To say that all three corporations were on friendly terms would be a gross understatement. The central management thought of the newly formed corporation merely as another source of profit. By the issuance of the 100 shares of capital stock (the entire issue except for the qualifying shares), the other two corporations secured control over petitioner's profits and were assured of an 8 percent annual dividend on the stock. No amount equivalent to the value of the properties transferred could have been paid in cash by petitioner at that time, inasmuch as it had neither cash nor unpledged assets; nor could it ever be paid in the future if the Water Co. held petitioner to the terms of the agreement, because so long as the annual net income had to be paid over to the Water Co. the petitioner never could amass cash or free assets with which to repay the Water Co. at any time for the properties transferred. If there were no profits in any year, then the Water Co. and the Fontana Co. would get nothing. If the profits were enormous, then the Water Co. and the Fontana Co. would get them all. The Water Co. chose to gamble. The mere fact that the aggregate net income paid over to the Water Co. approximates in amount legal interest on the unpaid balance of a loan estimated at $350,000 is merely coincidental. The transaction was strictly an investment from 1916 up to and including the taxable years.

As we said in *Bakers' Mutual Cooperative Association of Newark, New Jersey,* 40 B. T. A. 656; affd., 117 Fed. (2d) 27:

* * * a creditor is one who has loaned money or its equivalent to his debtor, the contract giving the creditor not only the unconditional right to demand payment of the principal sum at a definite maturity date, but usually, also, the right to demand, and receive, compensation for its use or retention, i. e., interest. A stockholder, on the other hand, is one who risks his money in an enterprise, participates in its profits and management, shares its losses, and is entitled to receive an aliquot portion of its assets in the event of liquidation. *Northern Fire Apparatus Co.,* 11 B. T. A. 355; *Elko Lamoille Power Co.,* 21 B. T. A. 291; affd., 50 Fed. (2d) 595.

It may be true that the agreement of 1916 indicated a possibility of the creation of a debtor-creditor relationship and the method to be followed if such a relationship were to be created in the future, but the mere existence of this possibility, which was never fulfilled,

can not affect our conclusion that, in reality, during the years in question the relationship of the Water Co. to petitioner was that of an investor and not that of a creditor.

Certain other factors lend further weight to this conclusion. From the facts it appears that in all the years from 1917 until the present time there was no attempt made to agree on a valuation of the properties and thus carry out that clause of the agreement and the order of the Railroad Commission of California which provided for payment of principal. We must assume that the reason for this was that, since the Water Co. during the years in question was the sole stockholder, that company and the petitioner were satisfied with an arrangement whereby all the profits went to the Water Co. under the agreement, and were not interested in creating any debtor-creditor relationship.

That part of petitioner's argument to the effect that the annual payments by petitioner were payments of interest which is based upon a supposed analogy to Pennsylvania and Maryland ground rents is no more convincing than its argument based on the same analogy to the effect that these payments were ordinary and necessary business expenses, the fallacy of which we have already discussed.

Neither are we impressed by petitioner's argument that the payments involved here, made by petitioner to its stockholders for so many years, can not be considered as distributions in the nature of dividends because (1) they were made pursuant to a contract and not pursuant to the rights of the payees as stockholders, and (2) the distributions consisted of the net earnings and not the surplus profits technically available for dividends. We are persuaded that the contract was executed and the distributions were made for so many years pursuant thereto because the Fontana Co. and/or the Water Co. were the holders of all of the stock of petitioner (except qualifying shares). It was because of this latter fact that the arrangement proved so permanently satisfactory to petitioner's controlling stockholders, and if we are to recognize the realities we must conclude that the ultimate reason for the distributions made to the Fontana Co. and/or the Water Co. was because, for all practical purposes, they were the sole stockholders of petitioner. As to them, by the peculiar arrangement present in this proceeding, it made little difference whether the distribution consisted of petitioner's net earnings or surplus profits. By the contract which they imposed on their wholly owned subsidiary they were entitled to the former. Without the contract they would have been entitled to the latter. The amount to be received by them would be the same. The practical effect of the transactions was to distribute an amount equivalent to the net profits of petitioner to its stockholders.

We conclude that the payments made by petitioner to the Water Co. according to the agreement in the taxable years were distributions in the nature of dividends, and, accordingly, were not payments of interest, or ordinary and necessary business expenses.

*Decision will be entered for the respondent.*