### BLUNT v. KELLY, Formerly United States Collector of Internal Revenue for Fifth District of New Jersey.

#### Civ. No. 469.

District Court, D. New Jersey.

Nov. 8, 1941.

King & Vogt, of Morristown, N. J. (Harold A. Price, and Horace C. Jeffers, both of Morristown, N. J., of counsel), for plaintiff.

Charles M. Phillips, U. S. Atty., of Trenton, N. J., and Andrew D. Sharpe, and James P. Garland, Sp. Assts. to Atty. Gen., for defendant.

WALKER, District Judge.

Edith E. Blunt died July 3, 1934, a resident of Morristown, New Jersey. Albert C. Blunt, Jr., her son, the executor of her will, filed a federal estate tax return and upon the audit of the same the Commissioner of Internal Revenue and the Collector determined, over the filed protest of the executor, that the value of certain securities transferred by Mrs. Blunt to the Morristown Trust Company and Albert C. Blunt, Jr., as trustees, by indenture dated April 21, 1925, constituted at the date of her death a part of her gross estate subject to federal estate tax. The value of said securities at the date of her death was assessed and paid on August 2, 1936 by reason of the inclusion of said securities in the gross estate. The executor filed a claim for refund with the Collector of Internal Revenue who allowed the same only to the extent of $266.04, being a credit

for gift tax paid, and rejected the balance of the claim. It is this balance with interest which plaintiff is seeking to recover in this action.

The facts are :[1]

Edith E. Blunt died July 3, 1934, at the age of seventy-five years.[2]

On April 21, 1925, more than nine years prior to her death, she executed and delivered an indenture of trust to the Morristown Trust Company and Albert C. Blunt, Jr., trustees. At the same time she transferred to the said trustees the property covered thereby.

By the terms of said trust the trustees were directed to collect the income therefrom and pay the same to said Edith E. Blunt during her life, and upon her death to divide the corpus into six equal parts and to transfer the same to her children. The said Albert C. Blunt, Jr., trustee under the trust indenture, was one of the children of Edith E. Blunt and as such was entitled to receive one-sixth of the corpus of the trust estate upon her mother's death.[3]

At the time of executing said trust indenture Edith E. Blunt was sixty-six years of age. She was in excellent health at that time and had been for a period of many years, and continued to be for a long period thereafter. She was an active individual, interested in her family and grandchildren and in her garden, which was extensive.[4] She participated extensively in the activities of the association which controlled the park in which her summer home was situated.[5] She entertained extensively.[6] She travelled widely, including trips to Cape Cod where she went out on rowboat trips, visits to a fishing camp in a remote part of Canada, and numerous trips to Florida.[7] Her death was eventually caused by a stroke which occurred only a month before her death.[8] Dr. Baldwin's deposition shows that prior to the time when she suffered this stroke Mrs. Blunt had required his services only for minor ailments and had been in good health.

Mrs. Blunt's husband died on April 17, 1925.[9] Prior to his death, which occurred suddenly, he had made arrangements with the family lawyer, who is now deceased, for the drafting of this trust agreement and its execution by Mrs. Blunt. As a matter of fact, the original appointment which had been made before Colonel Blunt's death for the execution of the trust agreement was kept by Mrs. Blunt after the funeral, and the agreement was executed in the form in which it had been drawn.[10]

The trust indenture contained the following clause: "Should in their opinion the necessity arise, the Trustees are hereby empowered to use such portion of the principal of the trust fund as may seem proper for the support, care or benefit of the party of the first part."

After her husband's death Mrs. Blunt drew a will. It is dated April 28, 1925, one week after the execution of the trust agreement.

At no time from the date of the agreement to Mrs. Blunt's death did the necessity arise for the trustees to use any portion of the principal of the trust fund and no portion thereof was used.[11] Mrs. Blunt at all times during this period lived well within her income, in fact, she accumulated a savings account from her income,[12] and in addition made regular allowances for the assistance of certain of her adult children.[13]

### Questions Presented.

1. Was the transfer in trust by decedent on April 21, 1925, made in contemplation of death within the meaning of Section 302(c) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 67?

2. Was the transfer here involved intended to take effect in possession or enjoyment at or after death within the meaning of Section 302(c) of the Revenue Act of 1924?

### Discussion.

The government's contention that Mrs. Blunt set up the trust "in contemplation of death" is based on the creation of the trust four days after her husband's death and

---

[1] Rule 52, Federal Rules of Civil Procedure, Title 28 U.S.C.A. following section 723c.

[2] Testimony page 2.

[3] Testimony page 3.

[4] Testimony pages 4, 5, 35 and 42; Dr. Baldwin's deposition page 5.

[5] Testimony page 5.

[6] Testimony page 36.

[7] Testimony pages 4, 5, 40 and 41.

[8] Dr. Baldwin's deposition page 8.

[9] Testimony page 16.

[10] Testimony page 7.

[11] Testimony pages 12 and 31.

[12] Testimony page 13.

[13] Testimony page 14.

on the execution of her will ten days thereafter.

All of the evidence at the trial clearly showed that she was in good health at the time of the setting up of the trust indenture, that she was an extremely active and busy woman and that the motive for setting up the trust was to relieve her of the management of the funds and to put them beyond the reach of unscrupulous persons. There was also testimony that the trust had been thought of and drafts thereof made several weeks prior to the death of Colonel Blunt.

We do not believe thought of death was a contributing motive prompting the disposition of the property.[14]

Section 302(c) of the Revenue Act of 1924 [15] is the ground on which the government bases its contention that the trust fund in question is subject to the federal estate tax. The material provisions of this section are as follows:

Section 302: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property.

> \* \* \* \* \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, \* \* \*".

At the time of Mrs. Blunt's death, July 3, 1934, Section 302(c) of the Revenue Act then in effect subjected to tax trusts created by a decedent wherein the income was reserved by decedent for his life, but the United States Supreme Court in Hassett v. Welch [16] has decided that the amendment subjecting such trusts to tax was not retroactive and did not affect trusts created prior to the effective date of said amendment.

The transfer in question was intended to take effect in possession or enjoyment at or after death since it could not be determined until decedent's death whether any of the corpus of the estate would pass to the persons named in the instrument. It is clear from the provision providing that "should in their opinion the necessity arise, the Trustees are hereby empowered to use such portion of the principal of the trust fund as may seem proper for the support, care or benefit of the party of the first part"; that decedent intended that some or possibly all of the principal should be used for her care and support, if needed for that purpose.

Plaintiff argues that one of the trustees, Albert C. Blunt, Jr., had an interest adverse to the trustor implying that he would have been influenced by selfish motives in preventing decedent from benefiting under any circumstances by this provision in the trust instrument. Our view is that the decedent chose him as one of the trustees so that her interest and personal welfare could be more carefully protected, and that he would have hastened to her aid, if need be, and demanded that the corporate co-trustee join him in using the corpus to provide for the care and comfort she needed or desired.

The principle presented by the second question herein has been before the Supreme Court of the United States in Klein v. United States [17] and the principle of said case was reaffirmed and extended to cover situations where there was merely a possibility of reverter in Helvering v. Hallock.[18] Those two cases are binding upon us and control.[19] We are obliged to hold that the transfer was intended to take effect in possession or enjoyment at or after death within the meaning of Section 302(c) of the Revenue Act of 1924.

### Conclusions.

The trust was not created "in contemplation of death" within the meaning of Section 302(c) of the Revenue Act of 1924.

The transfer in trust was intended to take effect in possession or enjoyment at or after death within the meaning of Section 302(c) of the Revenue Act of 1924.

---

[14] United States v. Wells et al., 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867.

[15] The law in effect at the date of creation of the trust.

[16] Feb. 1938, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

[17] 283 U.S. 231, 51 S.Ct. 398, 75 L. Ed. 996.

[18] 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.

[19] See, also, Commissioner of Internal Revenue v. Kellogg, 3 Cir., 119 F.2d 54; Chase Nat. Bank of City of New York et al. v. Higgins, Collector, D.C., 38 F.Supp. 858; Harvard Law Review Vol. LV, No. 1, "Correlation of Gift and Estate Taxes"; The Yale Law Journal, Vol. 49, page 1118, "Inter Vivos Transfers and the Federal Estate Tax".