**PHILBRICK v. MANNING, Collector of Internal Revenue (UNITED STATES, Intervenor).**

Civ. A. No. 2983.

District Court, D. New Jersey.

Oct. 9, 1944.

Adolf L. Engelke, of Jersey City, N. J., and John D. Beals, of New York City, for plaintiff.

Thorn Lord, U. S. Atty., of Trenton, N. J., Paul J. Mulcahy, Asst. U. S. Atty.,

of Newark, N. J., and Leland T. Atherton, Chief Counsel to Atty. Gen., for defendant.

MEANEY, District Judge.

The question to be determined by the court in this case is whether or not the subject matter of a trust fund created by the decedent in favor of his son and daughter and their heirs, was taxable as part of the decedent's gross estate.

The facts as set forth largely by stipulation are as follows:

In 1921 John A. Philbrick, the decedent, created a trust giving one-half of the income to his son (plaintiff herein) and one-half to his daughter until each shall attain the age of 40 years; upon reaching that age, each to receive one-half of the principal of the trust fund. If either son or daughter shall die before attaining that age, leaving issue surviving, the one-half of the trust fund held for the benefit of that child to be paid to the issue of the deceased child; if either die before attaining the age of 40 years leaving no issue surviving, the income of the deceased child's share in one-half of the trust to be paid to the survivor and in the event the survivor die before attaining that age, the principal of the trust to be paid to the issue, if any, of such surviving child. If, however, both son and daughter should die before the age of 40 years, neither leaving issue surviving, the trustee is directed upon the death of the surviving child to pay the corpus of the trust to the settlor, his executors, administrators or assigns.

At the time of the settlor's death in 1939, the survivers were the son, aged 39 years and 11 months, two of his children, aged 14 and 12, and the daughter, aged 36 years and 7 months and her child aged 4 years. She was also with child, born several months after the death of the settlor.

The entire trust was taxed as part of the decedent's gross estate after deduction made for the value of the interests of the son and daughter at the death of the settlor. Plaintiff in his representative capacity objects to the inclusion of the trust estate in the settlor's taxable estate and the resultant tax thereon.

Under these circumstances, the solution of the question posed is to be found in an analysis and determination of the character of the trust. If the settlor by its terms completely divested himself of the income and corpus of the trust, retaining no control over it and having no string whereby he could have regained control over it, then there was such a grant of his interest as would prevent the inclusion of the corpus of the trust in his gross estate for the purpose of taxation at his death. The plaintiff herein contends that such is the situation in the instant case. The defendant and the United States of America as intervenor maintain that the settlor in the creation of the trust made a gift inter vivos to take effect in possession or enjoyment at or after his death and that therefore the estate tax imposed by the Collector was properly assessed, since the transfer involved was actually testamentary in character. This attitude finds its basis in the contention that the decedent retained a taxable interest in the entire principal of the trust fund at the time of his death, since he died before his children became 40 years of age; and had a reversionary interest in the trust corpus such as would bring the transfers "within the ambit of the statute".

There would seem to be conflict among the various decisions affecting the application of the provisions of the estate tax law.

In the case of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 447, 84 L.Ed. 604, 125 A.L.R. 1368, the Supreme Court suggested the avoidance of verbal acrobatics and linguistic calisthenics in attempts to evaluate formulae of the technique of conveyance as set forth in one or other of various disputed cases. It set forth this guide rule of interpretation: "Whether the transfer made by the decedent in his lifetime is 'intended to take effect in possession or enjoyment at or after his death' by reason of that which he retained, is the crux of the problem."

Judged by this standard, it would seem that the trust created in the instant case constituted a completed gift inter vivos, the use and enjoyment of which was not contingent on the death of the settlor.

"From the controlling decisions, it would seem that the criterion for determining whether the transfer of an interest is intended to take effect in possession or enjoyment at or after the transferor's death is whether he retains a string or tie whereby he can reclaim the transferred property or whether he has otherwise reserved an interest whose passing to others is determinable by his death." Lloyd's Estate

v. Commissioner of Internal Revenue, 3 Cir., 141 F.2d 758, 760. See also Fidelity-Philadelphia Trust Co. et al. v. Rothensies et al., 3 Cir., 142 F.2d 838, recognizing the same principles (though arriving at a different conclusion as to the particular set of facts then under consideration).

True there is a provision in the indenture creating the trust which envisages a possible reversion of the trust corpus to the estate of the settlor. However the transfer was made without reference to the settlor's death. No interest was created which was contingent on his demise. Nothing in the trust passed, nor were any interests in the trust estate increased or otherwise affected by the settlor's death. Not at any time could the settlor do anything which would alter the conditions of the trust so as to bring back to himself all or any part of the contents of the trust properties. Here as is said in Commissioner of Internal Revenue v. Kellogg, 3 Cir., 119 F.2d 54, 57, "the grantor did not provide any string or tie * * * whereby he could pull the res back to him or invade the corpus."

■ In the instant case the court is convinced, without reference to the report of the actuary introduced at the hearing, that the settlor had a mere possibility of reverter, dependent on the death of his two children and their children before the daughter reached 40 years of age, but such possibility seems to the court to be so remote as to make the pronouncement in the Lloyd's case, hereinbefore cited, peculiarly applicable. "True enough, the settlor did die possessed of a possibility of reverter because of remote contingencies related to the existence and actions of others over which he had no control. Indeed, the contingent reversionary interest was present by operation of law, even had the settlor made no mention of it, from the very nature of the unavoidable circumstances. The possibility of reverter arbitrarily attached despite the settlor's complete cession of any interest in or control over the properties. It did not attach, however, in furtherance or effectuation of any intent or desire on his part, as evidenced by his transfers."

The degree or likelihood or remoteness of the contingency upon which there would be a reverter, must be taken into consideration in solving the question of whether or not the settlor retained such interest in the estate as would entitle the imposition of estate tax at the time of his death. See Biddle Trust et al. v. Commissioner of Internal Revenue, 3 T. C. 832.

■ In considering decedent's intention, the instrument creating the trust, taken together with extrinsic circumstances, would indicate complete and present divestment of his interest in the trust fund at the time of its creation. He dealt "with the foreseeable contingencies in such a way that the property would be permanently severed from his estate", and this is not offset by the fact that a merely and remotely possible failure of all beneficiaries, actual and potential, might occur before his daughter arrived at the age of 40.

For the reasons hereinbefore stated, it would appear that the corpus of the trust is not includable in the gross estate to be taxed as of the date of the decedent's death, either under section 811(a) of the Internal Revenue Act, or 811(c), 26 U.S. C.A.Int.Rev.Code, § 811(a or c).

There is a further question concerning a demand promissory note of the decedent's son, made on June 7, 1931, on which interest was paid only during the first year of existence. From the testimony adduced at the hearing, it was evident that no demand for payment had ever been made by decedent and that in referring to the note the decedent said to his son "You had better forget about it" at about the time of the last payment of interest in 1932. That since 1932 payment of neither principal nor interest was ever made or requested.

This note was included in the decedent's taxable estate and objection is made thereto.

■ It would appear to the court that the exception was well taken. The statute of limitations while it does not discharge a debt, does however afford a valid defence, and a note barred by the statute is not a subsisting obligation on which enforcement can be had. In the absence of voluntary payment, no funds could be accreted to the estate holding the note. In the instant case, in the accounting filed in the Essex County, New Jersey, Orphans Court, the note was shown as worthless and no objection having been filed to said accounting, it was judicially settled and allowed by decree of the said Orphans Court. While this would not be determinative of the right of the Collector to

assess a tax thereon, particularly as the executor of the decedent's testament was the maker of the note in question, of United States v. Mitchell et al., 7 Cir., 74 F.2d 571, an inference is strongly to be deduced therefrom that the Statute of Limitations was contemplated as a defense to possible suit on the note and that voluntary payment of the obligation was negated. Therefore the note represented nothing of value upon which to predicate the assessment of a tax. There is no question here of exercise of a "right to retainer". Therefore the court is of the opinion that there was an erroneous assessment of tax on this amount.

By virtue of the conclusions arrived at herein, the counterclaim of the United States as intervenor is declared to be without merit and is dismissed.

The court finds that there was probable cause for the assessment and collection of the tax made by the Collector and will so certify.

Let judgment be entered in favor of the plaintiff.